## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN,
## SOUTHERN DIVISION

| | |
|---|---|
| BRIAN LYNGAAS, D.D.S., individually and as the representative of a class of similarly-situated persons, | ) ) ) ) Case No. 17-cv-10910 |
| | ) |
| Plaintiff, | ) ) |
| v. | ) ) CLASS ACTION |
| CURADEN AG, CURADEN USA INC, and JOHN DOES 1-12, | ) ) ) |
| | ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

Plaintiff, Brian Lyngaas, D.D.S. ("Plaintiff"), brings this action on behalf of himself and all other persons similarly situated and, except for those allegations pertaining to Plaintiff or his attorneys, which are based upon personal knowledge, alleges the following upon information and belief against defendants Curaden AG, Curaden USA Inc., and John Does 1-12, (collectively "Defendants"):

## PRELIMINARY STATEMENT

1.    Defendants have sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227,

and the regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2.    Plaintiff has received at least two of Defendants' advertisements by facsimile and in violation of the TCPA. Exhibits A and B. Plaintiff did not expressly invite or permit either of Defendants to send him an advertisement by facsimile, Plaintiff has no prior business relationship with Defendants, and Defendants' faxes did not contain the opt-out notice required by the TCPA.

3.    Plaintiff brings this action on behalf of himself and a class of all similarly-situated persons, and against Defendants, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages, injunctive relief, compensation and attorney's fees (under the conversion count), and all other relief the Court deems appropriate under the circumstances.

4.    Unsolicited advertising faxes cause damage to their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. Unsolicited advertising faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use

for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. Moreover, a junk fax interrupts the recipient's privacy. An unsolicited fax also wastes the recipient's valuable time that would have been spent on something else.

5.     The TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a facsimile machine, an unsolicited advertisement…." 47 U.S.C. § 227 (b)(1)(C). The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission…." *Id.*, § 227 (a)(5).

6.     Both Exhibits A and B were broadly targeted to "Dental Professionals."

## PARTIES, JURISDICTION, AND VENUE

7.     Plaintiff is a dentist who resides in Michigan. Plaintiff's dental practice is in Livonia, Michigan, which is in Wayne County.

8.     Defendant Curaden USA Inc. is an Ohio corporation with

headquarters located in Cincinnati, Ohio. Curaden USA Inc. was formerly known as Curaprox USA Inc.

9.    Defendant Curaden AG is a Swiss-owned company with headquarters in Kriens, Switzerland. Curaden AG employs more than 150 people. Exhibit C.

10.    John Doe Defendants 1-12 are persons yet unknown to Plaintiff that actively participated in the transmission of fax advertisements to the class, benefitted from those transmissions, or are successors in interest to Defendants. When Plaintiff discovers their identities, he will seek leave to amend this complaint to add allegations regarding such person's activities and liabilities in this action.

11.    The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

12.    Personal jurisdiction exists over Defendants in Michigan because, through unlawful facsimile advertisements, Defendants have transacted business and committed tortious acts within the State.

13.    General personal jurisdiction exists over Defendants in Michigan because Defendants aggressively market and sell their products and services in Michigan.

14.    Venue is proper in the Eastern District of Michigan, Southern Division because Defendants committed statutory torts within this District and a significant portion of the events took place here.

## FACTS

15.    Defendants sent advertisements by facsimile to Plaintiff and a class of similarly-situated persons. Whether Defendants did so directly or with the assistance of a third party (yet unknown to Plaintiff), Defendants are jointly and severally liable for violating the TCPA.

16.    Plaintiff has received at least two of Defendants' advertisements by facsimile. A true and correct copy of the fax Plaintiff received on March 8, 2016 is attached as Exhibit A. A true and correct copy of the fax Plaintiff received on March 28, 2016 is attached as Exhibit B. Plaintiff intends to discover the number of other Defendants' advertisements sent to Plaintiff by fax. Exhibit M, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

17.    Exhibit A is a one-page document that Plaintiff received by fax seeking to sell "Curaprox" "5460 Ultra Soft Toothbrushes" to

Plaintiff and other "Dental Professionals."

18.    Exhibit A includes "Curaprox" and "Mind The Gap" on the upper right corner of the fax. Curaprox is a registered trademark owned by Curaden AG. Exhibit C.

19.    "Mind The Gap" is a marketing message or slogan used by Curaden AG.

20.    Exhibit A advertises Defendants' products to Plaintiff and other "Dental Professionals":

> 5460 Ultra Soft Toothbrush is the only one with 5460 CUREN® bristles form an effective, durable and exceptionally gentle surface. The individual ultra fine bristles reach, in the non traumatic way, even the most difficult to reach areas of gums and teeth.
>
> * * *
>
> 5460 CUREN® bristles in assorted colors - 0.1 mm in diameter - Compact head, slightly angled - Octagonal handle helps users to brush at the correct angle - Ultra Soft toothbrush offers unparalleled gentleness and efficiency!

Exhibit A.

21.    Exhibit A offers to permit Plaintiff and other "Dental Professionals" to participate in a "patient sampling program." Through the "patient sampling program," Plaintiff and other "Dental Professionals" could purchase a box of Defendants' "5460 Ultra Soft

Toothbrushes" for $107.64; or purchase a box of 72 toothbrushes, receive 72 more free for a total of $141.12; or purchase a box of 144 toothbrushes, receive 144 more free for a total of $282.24. <u>Exhibit A</u>.

22. <u>Exhibit A</u> asks that Plaintiff and other "Dental Professionals" complete a form with their practice name, name, address, phone, email, and credit card information. <u>Id</u>. Plaintiff and other "Dental Professionals" were to fax the order back to (513) 871-9207 or email a completed order to "diane@curaproxusa.com" or call (602) 432-4589. <u>Id</u>.

23. <u>Exhibit A</u> requests that Plaintiff and other "Dental Professionals" like Defendants on "Facebook Curaprox USA and Twitter." <u>Id</u>.

24. <u>Exhibit A</u> does not include the opt-out notice required by the TCPA. *See* 47 U.S.C. § 227 (b) (2) (D) & (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v).

25. <u>Exhibit B</u> is a one-page document that Plaintiff received by fax seeking to sell "Curaprox" "5460 Ultra Soft Toothbrushes" to Plaintiff and other "Dental Professionals."

26. <u>Exhibit B</u> advertises Defendants' products and seeks to

7

make a profit from Plaintiff and other "Dental Professionals":

> Take the Cruaprox [sic] 5460 Ultra Soft Toothbrush Challenge. Use our 5460 Ultra Soft Toothbrush for one week and then go back to your old toothbrush. Bet you won't want to go back...
>
> * * *
>
> Why is a toothbrush called 5460??? Because that is how many bristles are on the brush!!! (most brushes average only 1600 bristles)

Exhibit B.

27.    Exhibit B offers "for a limited time: AVAILABLE FOR $.98 CENTS PER/BRUSH (for dental professionals only." Exhibit B offers to sell 72 toothbrushes to Plaintiff and other "dental professionals" and they will receive 72 more for free for $141.12.

28.    Exhibit B asks that Plaintiff and other "Dental Professionals" complete a form with their practice name, name, address, phone, email, and credit card information. Id. Plaintiff and other "Dental Professionals" were to fax the order back to (513) 871-9207 or email a completed order to "diane@curaproxusa.com" or call Defendants at (602) 432-4589 or Plaintiff and other "dental professionals" can order online at www.curaproxusaprofessional.com. Id.

29.    Exhibit B does not include the opt-out notice required by the

8

TCPA. *See* 47 U.S.C. § 227 (b) (2) (D) & (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v).

30.   Plaintiff did not expressly invite or give permission to anyone to send Exhibit A or Exhibit B or any other advertisement from Defendants' to Plaintiff by facsimile.

31.   On information and belief, Defendants sent advertisements by facsimile to Plaintiff and more than 39 other persons in violation of the TCPA.

32.   Plaintiff and the other class members owe no obligation to protect their fax machines from Defendants' unlawful advertisements. Their fax machines are ready to send and receive their urgent communications, or private communications about patients' medical needs, not to receive junk faxes.

### DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE

33.   The facsimiles at issue advertise the commercial availability or quality of property, goods, or services of Curaden AG. 47 C.F.R. § 64.1200(f)(10).

34.   The facsimiles at issue were sent on behalf of Curaden AG. 47 C.F.R. § 64.1200(f)(10).

35.   In July 2015, Curaden AG merged with Curaden International AG and Curaden IT Solutions AG to form a digital networking and integration company called Curaden AG. Exhibit D. Curaden International developed oral health products and marketed them worldwide. Id. Curaden IT Solutions developed dental practice management software for the dental market. Id. Curaden AG marketed dental practice equipment and supplies to dentists, dental hygienists and dental laboratories in Switzerland. Id.

36.   Curaden AG claims to be "pioneering experts in oral health and individual dental prophylaxis." Exhibit E. In 2015, Curaden AG manufactured over 28 million toothbrushes. Exhibit F.

37.   Plaintiff received faxes advertising the "Curaprox Ultra-Soft" toothbrush. Exhibits A and B. "Curaprox" is a trademark registered to Curaden AG. All Curaprox products have been created and developed in Switzerland since 1972. Exhibit E. Under the Curaprox brand name, Curaden AG develops products targeted towards oral health. Id.

38.   Curaden AG's Swiss website claims:

Curaden AG evolved from Hans Breitschmids' dental supply business, which was founded in 1954. In 1965, his son Ueli

entered the business and, from 1972 on, developed it into the Curaprox oral health brand, which now operates in over 60 countries. Curaden...the Curaprox and Swiss Smile brands, together with iTOP oral prophylaxis training, are gaining an international reputation; in the Czech Republic and Slovakia, for example, the Curaprox CS 5460 toothbrush ultra soft has achieved cult status; in Slovenia, the toothbrush was selected as '2015 Product of the Year.'

Exhibit C.

39.  Exhibit A includes the marketing language that the "5460 Ultra Soft Toothbrush is the only one with 5460 Curen ® bristles…." "Curen" is a trademark registered to Curaden AG.

40.  Curaden AG has at least 18 current or dead registered trademarks, including: Curen, Double Happiness, Curasept, The Solo Technique, Think Further, White is Black, Black is White, ITOP, Prevention 1 One, Dental-Beauty 1 One by Curaden, Prevention 1 One, Vitalswiss, Curababy, Curaprox, iTop, Touch to Teach, CPS, and curaprox. Exhibit G.

41.  Curaden USA Inc. is the exclusive United States distributor for Curaden AG. Exhibit H.

42.  Curaden USA Inc. was incorporated in Florida in 2009 as Curaprox USA Inc. At the time, Curaprox USA Inc. identified Curaden International an officer of Curaprox USA Inc. Exhibit L.

11

43.    On May 19, 2014, Curaprox USA Inc. filed an amendment changing its name to Curaden USA Inc.

44.    Curaden USA Inc. was re-incorporated or re-domesticated in Ohio on February 16, 2016. Exhibit I.

45.    On information and belief, Curaden AG remains an officer or director of Curaden USA, Inc.

46.    Exhibits A and B request Plaintiff and other "dental professionals" to email diane@curaproxusa.com with their orders. That e-mail address—diane@curaproxusa.com—is the e-mail address of Ms. Diane Hammond, who is a seminar/marketing manager for Curaprox USA a/k/a Curaden USA Inc. Exhibit J.

47.    The main website for the Curaprox line of products is www.curaprox.com. Defendants allow consumers located in the United States to shop through www.curaprox.com by directing them to https://shop.curaprox.us.com.

48.    Defendants include a Terms & Conditions link on their shopping page that states:

> These Terms and Conditions of Use (the 'Terms of Use') apply to the Curaprox web site located at www.Curaprox.com, and all associated sites linked to www.Curaprox.com by Curaprox, its subsidiaries and

affiliates, including Curaprox sites around the world (collectively, the 'Site'). The Site is the property of Curaprox, Inc. ('Curaprox') and its licensors. BY USING THE SITE, YOU AGREE TO THESE TERMS OF USE; IF YOU DO NOT AGREE, DO NOT USE THE SITE.

<u>Exhibit K</u>.

## CLASS ACTION ALLEGATIONS

49.  Plaintiff brings this action as a class action on behalf of himself and all others similarly situated as members of a class, initially defined as follows:

> Each person in the United States sent one or more telephone facsimile messages about any "Curaprox" product, but not stating on its first page that the fax recipient may request that the sender not send any future fax and that the sender's failure to comply with such a request within 30 days would be unlawful.

Plaintiff expressly reserves the right to modify the proposed class definition or propose subclasses.

50.  Excluded from the class are Defendants, any entity in which Defendants have a controlling interest, each of Defendants' officers, directors, legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, including his or her immediate family.

51.  On information and belief, Defendants' fax advertising campaigns involved other, substantially-similar advertisements also

sent without the opt-out notice required by the TCPA. Plaintiff intends to locate those advertisements in discovery.

52.  This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23.  This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

53.  **Numerosity/impracticality of joinder.** On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiff, but will be obtained from Defendants' records or the records of third parties.

54.  **Commonality and predominance.** There is a well-defined community of interest and common questions of law and fact that

predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

    a.    Whether <u>Exhibit A</u>, <u>Exhibit B</u>, and other yet-to-be-discovered facsimiles advertised the commercial availability or quality of property, goods or services;

    b.    Whether Curaden USA Inc. is liable as a sender of those faxes;

    c.    Whether Curaden AG is liable as a sender of those faxes;

    d.    The manner and method used to compile or obtain the list(s) of fax numbers to which they sent the faxes contained in <u>Exhibits A and B</u> and other fax advertisements;

    e.    Whether the fax advertisements contained the opt-out required by the TCPA;

    f.    Whether Plaintiff and the other class members should be awarded statutory damages;

g.    If the Court finds that Defendant(s) willfully or knowingly violated the TCPA, whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount;

h.    Whether the Court should enjoin Defendants from faxing advertisements in the future; and

i.    Whether Defendants' conduct as alleged herein constituted conversion.

55.    **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because Plaintiff and all class members were injured by the same wrongful practices. Plaintiff and the members of the class received Defendants' advertisements by facsimile and those advertisements did not contain proper opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendants' conduct, if Plaintiff prevails on its claims, then the other putative class members will prevail as well.

56.    **Adequacy of representation.** Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class he seeks to represent. Plaintiff has retained

counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and its counsel will fairly and adequately protect the interest of members of the class.

57. **Prosecution of separate claims would yield inconsistent results.** Even though the questions of fact and law in this action are predominantly common to Plaintiff and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendants to operate under if or when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if Defendants choose to advertise by fax again in the future.

58. **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class

members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

59.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

60.    Plaintiff brings Count I on behalf of himself and a class of similarly situated persons against Defendants jointly and severally.

61.    The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

62.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without

18

that person's express invitation or permission."  47 U.S.C. § 227 (a) (4).

63.   <u>Exhibit A</u> advertises Defendants' commercially available dental products or goods.

64.   <u>Exhibit B</u> advertises Defendants' commercially available dental products or goods.

65.   Curaden AG created the products advertised on the subject faxes and Curaden USA Inc. is tasked with distributing those products to residents of the United States.

66.   The aim for transmitting the subject faxes is for both Defendants to profit.

67.   Defendants sent <u>Exhibits A and B</u> to Plaintiff and other "dental professionals" in attempt to sell them Defendants' commercially available property, goods, or services.

68.   The TCPA provides a private right of action as follows:

> 3.   <u>Private right of action</u>.  A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> > (A)   An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

   (B) An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

   (C) Both such actions.

47 U.S.C. § 227 (b) (3).

69. The Court, in its discretion, may treble the statutory damages if the Court determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

70. Here, Defendants jointly and severally violated 47 U.S.C. § 227 (b) (1) (C) by sending, or causing to be sent, advertisements by facsimile (such as Exhibits A and B) to Plaintiff and the other class members without their prior express invitation or permission.

71. The TCPA requires that every advertisement sent by facsimile must include an opt-out notice clearly and conspicuously displayed on the bottom of its first page. 47 U.S.C. § 227 (b) (2) (D) and (E); and 47 C.F.R. § 64.1200 (a) (4).

72. Defendants failed to include a clear and conspicuous opt-out notice on Exhibits A and B.

73. The TCPA expressly mandates the form and content of an opt-out notice. 47 U.S.C. § 227 (b) (2) (D) & (E), in relevant part, states:

In implementing the requirements of this subsection, the Commission ...

(D) shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if...

(i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement;

(ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;

(iii) the notice sets forth the requirements for a request under subparagraph (E);

(iv) the notice includes—

(I) a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the   sender; and

(II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by rule require      the   sender   to   provide   such   a mechanism and may, in the      discretion   of   the Commission and subject to such conditions as      the Commission   may   prescribe,   exempt   certain   classes   of small      business   senders,   but   only   if   the Commission determines      that   the costs to such class are unduly burdensome given the       revenues generated by such small businesses;

(v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual or business to make such a request at any time on any day of the week; and

(vi) the notice complies with the requirements of subsection (d) of this section;

(E) shall provide, by rule, that a request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if—

> (i) the request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

> (ii) the request is made to the telephone or facsimile number of the sender of such an unsolicited advertisement provided pursuant to subparagraph (D)(iv) or by any other method of communication as determined by the Commission; and

> (iii) the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine;

74.    The FCC's regulations at 47 C.F.R. § 64.1200 (a) (4) (iii) &

(v) expressly require the following:

> (iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if -

(A) The notice is clear and conspicuous and on the first page of the advertisement;

(B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful;

(C) The notice sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section;

(D) The notice includes -

(1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and

(2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or email address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and

(E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

...

(v) A request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if -

(A) The request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

(B) The request is made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement; and

(C) The person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine.

75. Exhibits A and B do not provide the information the TCPA requires for a compliant opt-out notice.

76. Defendants violated the TCPA by failing to state on the first page of each fax advertisement that their failure to comply with an opt-out request within 30 days would be unlawful. Exhibits A and B.

77. Defendants violated the TCPA by failing to include both a domestic contact telephone and facsimile machine number for Plaintiff and the other class members. Id.

78. Exhibits A and B fail to set forth the requirements for Plaintiff or any member of the putative class to properly request an opt-out as explained by 47 C.F.R. § 64.1200 (a) (4) (v). Specifically, the faxes do not inform Plaintiff and other putative class members that they must identify the telephone number(s) of the telephone facsimile

24

machine(s) to which the opt-out request relates. Additionally, the fax fails to inform Plaintiff and the putative class that a request must be made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement. Finally, the faxes fail to inform Plaintiff and the putative class that the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine

79.     Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4).

80.     Defendants' failure to include a compliant opt-out notice on their fax advertisements makes irrelevant any express consent or established business relationship ("EBR") that otherwise might have justified Defendants' fax advertising campaigns. 47 C.F.R. § 64.1200 (a)

(4).

81.    Defendants are jointly and severally liable to Plaintiff and the other class members even if their actions were negligent. 47 U.S.C. § 227 (b) (3).

82.    If Defendants' actions were knowing or willful, then the Court has the discretion to increase the statutory damages up to three times the amount. 47 U.S.C. § 227 (b) (3).

83.    Defendants are jointly and severally liable for the fax advertisements at issue because Defendants sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes were sent on their behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

84.    Defendants directly benefited from the sending of the fax advertisements by promoting their property, goods, or services with the aim of profit as the purpose.

85.    Defendants' actions damaged Plaintiff and the other class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes.

Moreover, the subject faxes used the fax machines of Plaintiff and the other class members. The subject faxes cost Plaintiff time, as Plaintiff and its employees wasted their time receiving, reviewing and routing Defendants' illegal faxes. That time otherwise would have been spent on Plaintiff's business activities. Defendants' faxes unlawfully interrupted Plaintiff and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of unlawful fax advertisements occurred outside Defendants' premises.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendants, jointly and severally as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award $500.00 in statutory damages for each violation of the TCPA;

C.    That, if the Court finds Defendant(s) willfully or knowingly

violated the TCPA's faxing prohibitions, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount (Plaintiff requests trebling);

D.    That the Court enter an injunction prohibiting Defendants from violating the TCPA; and

E.    That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## CONVERSION

86.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

87.    Plaintiff brings Count II on behalf of himself and a class of similarly situated persons and against Defendants.

88.    By sending advertisements to their fax machines, Defendants improperly and unlawfully converted the class's fax machines to Defendants' own use. Where printed (as in Plaintiff's case), Defendants also improperly and unlawfully converted the class members' paper and toner to Defendants' own use. Defendants also converted Plaintiff's time to Defendants' own use, as they did with the

28

valuable time of the other class members.

89.    Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other class members each owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

90.    By sending them unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

91.    Defendants knew or should have known that their misappropriation of paper, toner, and employee time was wrongful and without authorization.

92.    Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

93.    Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in

receiving, routing, and reviewing Defendants' illegal faxes. Defendants knew or should have known employees' time is valuable to Plaintiff.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendants, jointly and severally as follows:

A.   That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.   That the Court award appropriate damages;

C.   That the Court award punitive damages;

D.   That the Court award attorney's fees;

E.   That the Court award costs of suit; and

F.   That the Court award such further relief as the Court may deem just and proper under the circumstances.

Respectfully submitted,

BRIAN LYNGAAS, D.D.S., individually and as the representative of a class of similarly-situated persons,

By: /s/ Phillip A. Bock

Phillip A. Bock
Robert M. Hatch (MI Bar No. P46566)
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle Street, Suite 100
Chicago, IL 60602
Telephone: (312) 658-5500

Richard Shenkan
Shenkan Injury Lawyers, LLC
MI Attorney ID 79800
6550 Lakeshore St.
West Bloomfield, MI 48323
Telephone: (248) 562-1320
rshenkan@shenkanlaw.com