UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN LYNGAAS, D.D.S.,
individually and as the representative
of a class of similarly situated persons,

      Plaintiff,

vs.

CURADEN AG,
et al.

      Defendants.
_____/

Case No. 17-cv-10910
Hon. Mark A. Goldsmith

CLASS ACTION

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION TO DISMISS (Dkt. 16)

This matter is now before the Court on Defendant Curaden AG's motion to dismiss for lack of personal jurisdiction under Federal Rule 12(b)(2) (Dkt. 16). In response to the motion, Plaintiff Brian Lyngaas, D.D.S., requested that the Court allow him to take limited jurisdictional discovery, and the Court granted that request. Limited discovery has since concluded and the motion is fully briefed. Further, in response to the Court's order, see 2/20/2018 Order (Dkt. 40), the parties submitted supplemental briefing on the application of Federal Rule of Civil Procedure 4(k)(2) (Dkts. 41, 42). For the reasons that follow, the Court denies Curaden AG's motion.

### I. BACKGROUND

Lyngaas is a dentist who practices in Livonia, Michigan. Compl. ¶ 7 (Dkt. 1). On March 8, 2016, Lyngaas received a fax advertising the "Curaprox Ultra-Soft CS 5460 Toothbrush." Compl. ¶ 16; see also 3/8/2016 Fax, Ex. A to Compl. (Dkt. 1-1). On March 28, 2016, Lyngaas received a similar fax advertising the "Cruaprox [sic] 5460 Ultra Soft Toothbrush." Compl. ¶ 16;

1

see also 3/28/2016 Fax, Ex. B to Compl. (Dkt. 1-2). This advertisement also reads, "Like us on Facebook Curaprox USA and Twitter." Id. Both faxes state that an order of the toothbrushes should be emailed to diane@curaproxusa.com or can be ordered online at www.curaproxusaprofessional.com. See Exs. 3/8/2016 Fax; 3/28/2016 Fax. Lyngaas alleges that he did not give anyone permission to send either of these faxes to him, and that these faxes did not contain the opt-out notice required by the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Compl. ¶¶ 24, 29-30.

"Curaprox" is a trademark registered to Curaden AG, a privately-owned Swiss corporation. Id. ¶ 36. Curaden AG is a manufacturer of toothbrushes, one of which is the Curaprox Ultra-Soft 5460. See zur Nieden Dep., Ex. 1 to Pl. Resp., at 11, 15 (Dkt. 36-1). Defendant Curaden USA, a wholly owned distributor of Curaden AG, has the exclusive right to distribute Curaden AG's products in the United States. See Johnson Dep., Ex. 2 to Pl. Resp., at 11-12 (Dkt. 36-2); Compl. ¶ 41. Curaden AG authorizes Curaden USA to use its trademarks when promoting Curaden AG products. See zur Nieden Dep. at 36. Curaden AG provides Curaden USA with "guidelines" for what marketing images to use, and a "brand book" from which Curaden USA may use images. Id. at 46-47. Lyngaas alleges that Defendants faxed the aforementioned advertisements to him and at least 39 others in violation of the TCPA. Compl. ¶ 31.[1]

Lyngaas filed the instant complaint against Curaden AG and Curaden USA, bringing claims for violation of the TCPA and for conversion. Curaden USA filed an answer admitting that the Court had personal jurisdiction over it. See Answer ¶ 12 (Dkt. 12). Curaden AG, however,

---

[1] Jurisdictional discovery revealed that the faxes were sent by Curaden USA; Lyngaas alleges in his response to the motion to dismiss that "Curaden AG . . . created, funded and directed Curaden USA for the sole purpose of advertising its products in the United States and Michigan[.]" Pl. Resp. at 2 (Dkt. 31). However, Curaden AG was unaware of these specific faxes before they were sent. Zur Nieden Aff., Ex. 1 to Def. Mot., ¶ 6 (Dkt. 16-1).

filed a motion to dismiss, arguing that this Court had neither general nor specific jurisdiction over it. Curaden AG attached an affidavit from Clifford zur Nieden, the managing director of Curaden AG, in support. See zur Nieden Aff., Ex. 1 to Def. Mot. (Dkt. 16-1). In response, Lyngaas requested leave to take limited jurisdictional discovery of Curaden AG (Dkt. 20), which the Court permitted.

## II. ANALYSIS

### A. Standard of Proof for Personal Jurisdiction

"The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." Schneider v. Hardesty, 669 F.3d 693, 697 (6th Cir. 2012). The plaintiff's burden varies depending on the district court's response to the motion to dismiss, as the court may (i) decide the motion on the basis of written submissions and affidavits alone, (ii) permit discovery in aid of the motion, or (iii) conduct an evidentiary hearing on the merits of the motion. Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989); see also Akbar v. Bangash, No. 15-12688, 2017 WL 4334912, at *4 (July 11, 2017).

If the court decides the motion on the basis of written submissions and affidavits alone, the plaintiff's "relatively slight" burden consists of a prima facie showing that personal jurisdiction exists. Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 360 (6th Cir. 2008). When the court conducts an evidentiary hearing, a "preponderance of the evidence" standard applies. Schneider, 669 F.3d at 697. The parties disagree about which standard should be applied where, as here, the court allows limited discovery to take place but does not conduct an evidentiary hearing.

Several decisions from the Sixth Circuit suggest that the burden on a plaintiff who undertakes jurisdictional discovery, without conducting an evidentiary hearing, is the minimal

3

prima facie standard. See, e.g., Smith v. Home Depot USA, Inc., 294 F. App'x 186, 188-189 (6th Cir. 2008) (applying prima facie standard "because the district court determined the issue without holding an evidentiary hearing" even though the parties conducted jurisdictional discovery); Bridgeport Music, Inc. v. Still N the Water Publ'g, 327 F.3d 472, 476-478 (6th Cir. 2003) (plaintiff need only make a prima facie showing where the district court "granted the parties a limited time to conduct jurisdictional discovery, but did not conduct a hearing" on the motions to dismiss); but see Estate of Thompson, 545 F.3d at 360 ("Where. . . the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than conducting an evidentiary hearing or limited discovery, the plaintiff's burden is relatively slight") (emphasis added) (internal citations and quotations omitted).

In Dean v. Motel 6 Operating LP, 134 F.3d 1269 (6th Cir. 1998), the Sixth Circuit held that the appropriate standard in the case before it was a prima facie standard, "because (although there was discovery) there was no evidentiary hearing on the jurisdiction question." 134 F.3d at 1272. The court went on to state that it would not use this standard "if the reason for not having an evidentiary hearing was that there was no 'real dispute' as to the facts or to the extent of discovery." Id. (citing Int'l Techs. Consultants, Inc. v. Euroglas S.A., 107 F.3d 386, 391 (6th Cir. 1997)). In such a case, conducting an evidentiary hearing would be a waste of resources, and therefore the plaintiff would "face the same burden as they would if there had been an evidentiary hearing: proof of jurisdiction by a preponderance of the evidence." Id.

More recently, the Sixth Circuit examined its decision in Dean, noting that it could be read to create an "exception" to the prima facie standard in the absence of an evidentiary hearing. Schneider, 669 F.3d at 698. The court noted that statement in Dean was arguably dicta, and acknowledged in a footnote that "in most instances, this Circuit has applied the prima facie

4

standard in the absence of an evidentiary hearing without even considering the exception's possible application." Id. at 698 n. 7 (citing cases). The court ultimately concluded that it "need not decide conclusively whether the exception alluded to in Dean in fact exists" because the plaintiff had demonstrated personal jurisdiction under either standard. Id. at 699.

In the instant case, Lyngaas received all discovery that he requested, and although the parties may characterize certain facts differently, there does not appear to be a factual dispute. In such cases, the prima facie standard "loses some of its significance." Int'l Techs., 107 F.3d at 391. Nonetheless, the Court concludes that Lyngaas meets his burden of establishing personal jurisdiction over Curaden AG under either the prima facie or the preponderance of the evidence standard.

**B.      Personal Jurisdiction**

When a federal court has federal-question jurisdiction, as is the case here, "personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." Cmty. Trust Bancorp. v. Cmty. Trust Fin. Corp., 692 F.3d 469, 471 (6th Cir. 2012) (alterations omitted).

Michigan's long-arm statute extends both general and limited jurisdiction over corporations. A court may exercise general personal jurisdiction over a corporation that is incorporated under the laws of Michigan, consents to jurisdiction, or carries on "a continuous and systematic part of its general business" within Michigan. See Mich. Comp. Laws § 600.711. The long-arm statute extends limited personal jurisdiction over corporations in claims "arising out of an act which creates any of the following relationships," including "the transaction of any business

5

within the state" and "doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort." See Mich. Comp. Laws § 600.715.

The Due Process Clause requires that a defendant have sufficient "minimum contacts" with the forum state, such that a finding of personal jurisdiction does not "offend traditional notions of fair play and substantial justice." Conn v. Zakharov, 667 F.3d 705, 712 (6th Cir. 2012). "There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state." Id. at 712-713.

However, Federal Rule of Civil Procedure 4(k)(2) provides an alternate manner of obtaining jurisdiction over a defendant in certain circumstances.[2] "Rule 4(k)(2) acts as 'a sort of federal long-arm statute, authorizing jurisdiction even in the absence of a provision granting nationwide service of process." Sunshine Distrib., Inc. v. Sports Auth. Mich., Inc., 157 F. Supp. 2d 779, 788 (E.D. Mich. 2001) (quoting United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 36 (1st Cir. 1999)). To assert jurisdiction under Rule 4(k)(2), "(1) the plaintiff's claim must be one arising under federal law; (2) the putative defendant must be beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction over the defendant must not offend the Constitution or other federal law." Id. (quoting Swiss Am.

---

[2] Curaden AG notes that Plaintiff did not originally raise Rule 4(k)(2) as a basis for jurisdiction. Def. Supp. Br. at 2 (Dkt. 41). However, "[f]ederal courts are entitled to apply the right body of law, whether the parties name it or not." ISI Int'l, Inc. v. Borden Ladner Gervais LLP, 256 F.3d 548, 551 (7th Cir. 2001) (finding jurisdiction under Rule 4(k)(2) even though parties failed to raise it as a basis for personal jurisdiction); see also Merial Ltd. v. Cipla Ltd, 681 F.3d 1283, 1296 (Fed. Cir. 2012) ("Rule 4(k)(2) can be considered even when the plaintiff has affirmatively pled a different basis for personal jurisdiction."); Sunshine Distribution, Inc. v. Sports Authority Mich., Inc., 157 F. Supp. 2d 779, 787 n.4 (E.D. Mich. 2001) (applying Rule 4(k)(2) although "neither party cited or discussed the applicability of Rule 4(k)(2)").

Bank, 191 F.3d at 38). Thus, the constitutional requirements with respect to Rule 4(k)(2) are the same as with any other personal jurisdiction inquiry, but are taken in reference to the United States as a whole, rather than the forum state. Id.

Lyngaas alleges several theories of personal jurisdiction: general jurisdiction, specific personal jurisdiction, and alter-ego jurisdiction. As the Court concludes that the exercise of specific personal jurisdiction over Curaden AG is appropriate, it need not address Lyngaas's other arguments. The Court first addresses specific personal jurisdiction with respect to Curaden AG's contacts with Michigan, then with the United States.

    **i.    Specific Personal Jurisdiction – Contacts with Michigan**

In order for this Court to exercise specific personal jurisdiction over Curaden AG, Lyngaas must show that Curaden AG's activities in the state satisfy Michigan's long-arm statute, and that the exercise of jurisdiction comports with due process. See King v. Ridenour, 749 F. Supp. 2d 648, 652 n. 4 (E.D. Mich. 2010) ("[A]t least in Michigan, if a court concludes that due process is met, the court must also separately consider whether the long-arm statute is satisfied. In some cases . . . a court's exercise of jurisdiction over the defendant would be improper because the conduct giving rise to the action does not meet the requirements of Michigan's long-arm statute."). The Michigan long-arm provides jurisdiction over corporations in claims "arising out of an act which creates any of the following relationships," including "causing any . . . consequences to occur, in the state resulting in an action for tort." See Mich. Comp. Laws § 600.715(2).

In his complaint, Lyngaas alleges that the defendants committed tortious acts in Michigan, and also alleges that they either sent the faxes at issue or caused them to be sent. Compl. ¶¶ 12, 83. After receiving jurisdictional discovery, Lyngaas alleges in his response brief that Curaden AG caused consequence in Michigan "when it created Curaden USA and authorized it to market and sell Curaden AG's toothbrushes in the entire United States including Michigan." Pl. Resp. at

7

12 (Dkt. 31). Section two of the long-arm statute has been interpreted broadly, such that "any nexus between [business] transaction and tort shall allow limited personal jurisdiction to operate." Brabeau v. SMB Corp., 789 F. Supp. 873, 876 (E.D. Mich. 1992); see also Storie v. Beech Aircraft Co., 417 F. Supp. 141, 145 (E.D. Mich. 1976) ("[W]hen the Michigan statute speaks of causing consequences to occur within the state, it applies to situations in which an act or conduct outside of Michigan leads to an event in Michigan which gives rise to a tort claim."). The Court thus concludes that Lyngaas has shown that Curaden AG caused consequences to occur in Michigan that resulted in an action for tort.[3]

Having concluded that the long-arm statute is satisfied, the Court turns to due process. Specific jurisdiction requires the following three elements: (i) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (ii) the cause of action must arise from the defendant's activities there; and (iii) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. Conn, 667 F.3d at 713.

**a. Curaden AG purposefully availed itself of the privilege of causing consequence in Michigan**

---

[3] Curaden AG states that it is "unclear" whether a TCPA action falls within the meaning of a "tort" for the purposes of Michigan's long-arm statute, arguing that the TCPA was not passed until 1991 and the Michigan long-arm statute, enacted in 1963, "likely referenc[ed] traditional common law torts." Def. Mot. at 12 n. 4 (Dkt. 16). However, Curaden AG offers no support for its view, and in light of cases describing the TCPA as tort-like, the Court is satisfied that the TCPA would be considered a tort. See Advanced Derm. v. Adv-Care Pharm., Inc., No. 17-251, 2017 WL 5067576, at *3 (N.D. Ohio Nov. 1, 2017) (noting that Ohio courts consider a violation of the TCPA to be a "statutory tort" and that "a lawsuit under the TCPA is akin to a claim based upon trespass and conversion"); Wengle v. DialAmerica Mktg., Inc., 132 F. Supp. 3d 910, 918 (E.D. Mich. 2015) (noting FCC description of actions under the TCPA as "federal statutory tort actions"). Further, Lyngaas additionally asserts a claim for conversion.

Under the first prong of the analysis, Lyngaas must show that Curaden AG purposefully availed itself of the privilege of acting in Michigan or causing a consequence in Michigan. The Sixth Circuit has explained:

> [P]urposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in the forum state or conduct which can be properly regarded as a prime generating cause of the effects resulting in the forum state, something more than a passive availment of the forum state's opportunities. The purposeful availment requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant <u>himself</u> that create a substantial connection with the forum State, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there.

<u>Bridgeport Music, Inc. v. Still N The Water Pub.</u>, 327 F.3d 472, 478 (6th Cir. 2003) (internal citations, quotations, and alterations omitted) (emphasis in original). "The emphasis in the purposeful availment inquiry is whether the defendant has engaged in some overt actions connecting the defendant with the forum state." <u>Id.</u>

Lyngaas argues that Curaden AG purposely availed itself of causing consequence in Michigan by creating Curaden USA and authorizing it to market and sell Curaden AG's products in the entire United States, including Michigan. Pl. Resp. at 11-12. He contends that "this intentional act . . . was in fact necessary to and did subject Curaden AG to personal jurisdiction in this Court." <u>Id.</u> at 14-15.

The Court finds the Sixth Circuit's decision in <u>Bridgeport</u> instructive. In <u>Bridgeport</u>, the plaintiff alleged that one defendant, NTW, had infringed on its music copyrights by licensing infringing works and distributing the infringing compositions in Tennessee and elsewhere. The plaintiff argued that NTW had purposefully availed itself of the privilege of acting in Tennessee because NTW had issued mechanical licenses to a third party, and "has a financial interest in [the third party] selling as many records as possible . . . NTW does not desire to limit exploitation of

9

its compositions to a 'less-than-national' market, NTW has no objection to NTW's compositions being sold in Tennessee, and NTW knows that [the third party] distributes nationally and is likely to exploit NTW's compositions throughout the entirety of the United States, including in Tennessee." Id. at 480.

The Sixth Circuit concluded that this was insufficient to show purposeful availment. It stated that the plaintiff "does not assert that NTW entered into a distribution agreement . . . that placed an affirmative obligation upon the third party to distribute NTW's compositions in Tennessee or elsewhere." Id. In so doing, the court distinguished a prior decision, Tobin v. Astra Pharm. Prods., Inc., 993 F.2d 528 (6th Cir. 1993), where the Sixth Circuit found that the defendant, a Dutch manufacturer of pharmaceuticals, was subject to personal jurisdiction in Kentucky. There, the Dutch manufacturer had entered into a licensing agreement with a U.S. distributor, under which the distributor was to distribute the drug throughout "the United States of America, its territories and possessions, and Puerto Rico." The Tobin court held that the defendant "made a deliberate decision to market [its product] in all 50 states, including Kentucky, the forum state." Id. at 543 (emphasis in original). The Bridgeport court noted that, unlike NTW, "the Tobin defendants were not merely aware that their distributor was likely to market the product in all fifty states; rather, the parties' contract required it." Bridgeport, 327 F.3d at 480. Therefore, NTW's knowledge that the third party was "likely" to distribute the compositions nationally, along with its lack of objection to sales in Tennessee, was "insufficient conduct upon which to predicate purposeful availment." Id.

This requirement of an affirmative obligation to market the defendant's products in the forum was upheld in subsequent Sixth Circuit decisions. In Smith v. Home Depot USA, Inc., 294 F. App'x 186 (6th Cir. 2008), the court found that a German company, Krause-Werk, had not

10

purposefully availed itself of the privilege of acting in Tennessee. Krause-Werk had created and entered into a licensing agreement with its wholly-owned U.S. subsidiary, Krause, Inc., which gave the subsidiary an exclusive license to manufacture and sell its products in North and South America. Id. at 187. The court found that although the licensing agreement gave the subsidiary the right to use Krause-Werk's trademarks in connection with the "sale, marketing, or promotion" of its products, nothing in the licensing agreement <u>required</u> Krause, Inc. to market the products in Tennessee specifically. "The <u>permission</u> to sell its products in the wide expanse of North and South America is a far cry from a <u>requirement</u> to sell in Tennessee." Id. at 190 (emphasis in original). Similarly, in <u>Palnik v. Westlake Entertainment, Inc.</u>, 344 F. App'x 249, 252 (6th Cir. 2009), the court again articulated its position that purposeful availment of a forum state may exist where a "defendant 'sought' nationwide distribution by contracting with a distributor for sales 'throughout the United States, its territories, commonwealth, possessions . . .'" but does not exist where the "defendant was 'merely aware' of the fact of national distribution, but the choice to distribute was 'pretty much out of [its] hands.'" 344 F. App'x at 252 (quoting <u>Bridgeport</u>, 327 F.3d at 480).

Here, Lyngaas alleges that Curaden USA was "authorized to distribute and market Curaden AG products in the entire United States including Michigan," and was "the exclusive distributor for Curaden AG products in the United States." Pl. Resp. at 3. In his deposition, Dale Johnson, the vice president and managing director of Curaden USA, answered in the affirmative when asked, "And Curaden USA is tasked with selling products of Curaden AG, correct?" Johnson Dep. at 12. And although no written contract governs the relationship between the two entities, there exists a standard distribution template that Curaden AG uses with its distributors around the world. See id. at 15. Johnson testified that Curaden USA operates on an oral agreement with Curaden

11

AG that follows most of the tenets in the template agreement, although there are some elements of the relationship that are slightly different (such as the time frame in which Curaden USA will pay for the product ordered from Curaden AG). Id. at 16. Clifford zur Nieden, the managing director at Curaden AG, testified that his understanding was that the template distribution agreement governed the relationship between Curaden AG and Curaden USA. Zur Nieden Dep. at 13. This template agreement provides that "[t]he Distributor shall use its best endeavours [sic] to promote the sale of the Products throughout the Territory and to that end shall ensure that such marketing is ethical, tasteful, and does not adversely affect the image of the Products or the Company." Distribution Agreement, ¶ 5.1 (Dkt. 36-2). Johnson's testimony makes clear that the "Territory" for Curaden USA is the United States. See, e.g., id. at 11 ("We are a distributor, wholly owned distributor of Curaden AG here in the United States. So we do business here in the United States only on behalf of [Curaden] AG."), 24 ("What is the Curaden USA sales territory?" "The United States.").

This arrangement shows that Curaden USA has the obligation to market products throughout the United States. Curaden AG was not "merely aware that their distributor was likely to market the product in all fifty states," but rather "the parties' contract required it." Bridgeport, 327 F.3d at 480. Curaden USA was not merely given the rights to market products in the United States; it was to use its "best endeavors" to do so. Curaden USA was to promote the sale of Curaden AG's products "throughout the Territory," i.e. throughout the United States. Further, the Sixth Circuit has established that "advertising is among the activities that constitute 'reaching out' to forum state residents." Bridgeport, 327 F.3d at 481 (quoting Creech v. Roberts, 908 F.2d 75, 79 (6th Cir. 1990)). In Bridgeport, the court concluded that the record before it did not support a finding of purposeful availment in Tennessee based on advertising, noting that although the

plaintiff had alleged that a third party advertised "nationally, including in Tennessee, on behalf of and to the financial benefit of [Defendant] NTW," id., there was no evidence that the third party actually advertised on NTW's behalf, or that any advertising "directly target[ed] or . . . reach[ed] Tennessee," id. In contrast, the record here shows that Curaden AG directed Curaden USA to advertise nationally, and the advertisements did in fact reach Michigan.

Therefore, by requiring its distributor to market its products throughout the United States, Curaden AG has "engaged in some overt actions connecting [it] with [Michigan]." Bridgeport, 327 F.3d at 478.

**b. Lyngaas's cause of action arises out of Curaden AG's contacts**

The second consideration is whether Lyngaas's cause of action arises out of Curaden AG's activities in the forum state. "The Sixth Circuit establishes a 'lenient' threshold for meeting this requirement." Fortis Corp. Inc. v. Viken Ship Mgmt., 450 F.3d 214, 222 (6th Cir. 2006). "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1267 (6th Cir. 1996).

Here, Lyngaas's alleged injuries are clearly related to Curaden AG's contacts with Michigan; the fax advertisements that Lyngaas received in Michigan stem from Curaden AG's creation of its U.S. subsidiary and direction for it to advertise throughout the United States. Cf. Health One Medical Ctr., Eastpointe, P.L.L.C. v. Bristol-Myers Squibb Co., No. 16-13815, 2017 WL 3017521, at *6 (E.D. Mich. July 17, 2017) (finding that TCPA claim did not arise out of defendant's contacts with Michigan where "plaintiff offers no allegations to suggest that defendant advertises in Michigan or has hired Mohawk, Inc., whose name, logo and contact information is listed on the faxes, to advertise on its behalf.").

### c. It is reasonable to exercise jurisdiction over Curaden AG

The final consideration is whether it would be reasonable to exercise jurisdiction over Curaden AG, i.e., whether it would "comport with traditional notions of fair play and substantial justice." CompuServe, 89 F.3d at 1268 (quoting Reynolds v. Int'l Amateur Athletic Federation, 23 F. 3d 1110, 1117 (6th Cir. 1994)). Where, as here, the first two elements of a plaintiff's case are met, then an inference arises that the third factor is also present. Id. In determining whether the exercise of jurisdiction is reasonable, the court must consider several factors, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." Id. (quoting Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1169-1170 (6th Cir. 1988)). "However, an additional concern arises when the case involves a non-resident alien defendant[,]" as the court must "undertake the reasonableness inquiry giving special weight to the 'unique burdens placed upon one who must defend oneself in a foreign legal system.'" Theunissen v. Matthews, 935 F.2d 1454, 1460 (6th Cir. 1991) (quoting Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 114 (1987)) (emphasis in original).

Curaden AG argues that "neither owning nor manufacturing products advertised in Michigan is a sufficiently substantial connection to make the exercise of jurisdiction reasonable." Def. Mot. at 19 (Dkt. 16). However, it is not that Curaden AG manufactured products that simply happened to be advertised in Michigan – it intentionally created a U.S. subsidiary for the purpose of marketing and selling its products here. Dale Johnson, the vice president and managing director for Curaden USA, testified that Curaden USA "do[es] business here in the United States only on behalf of [Curaden] AG." Johnson Dep. at 11.

The Court is cognizant of the burden Curaden AG, as a Swiss corporation, would face in defending itself in Michigan. Curaden AG asserts that it has never been sued in federal court in the United States, nor has it initiated suit in U.S. federal court. Zur Nieden Aff. ¶ 8. However, the Court finds that these burdens are outweighed by the interests of Michigan and of Lyngaas (and any potential class) in obtaining relief.

Michigan has an interest in protecting its citizens from violations of the law. Further, Lyngaas's interest in obtaining relief will be much more difficult if Curaden USA is the only defendant involved in this case, as Curaden USA is not profitable and does not expect to be so for several more years. Johnson Dep. at 74; cf. City of Monroe Employees Retirement Sys. v. Bridgestone Corp., 399 F.3d 651, 666 (6th Cir. 2005) (finding the interests of the United States and class plaintiffs to be "relatively light" where the court's jurisdiction over the "key defendants" was already conceded and "the marginal addition of Kaizaki would add little or nothing to the potential recovery should the plaintiffs ultimately prevail on the merits and be awarded damages").

Accordingly, the Court concludes that the exercise of personal jurisdiction over Curaden AG would be reasonable, and thus comports with due process.

**ii.     Specific Personal Jurisdiction – Contacts with the United States**

However, even if the above analysis regarding specific personal jurisdiction in Michigan is incorrect, Lyngaas may still show that Curaden AG is subject to jurisdiction based on Federal Rule of Civil Procedure 4(k)(2). As explained above, in order to exercise jurisdiction under Rule 4(k)(2), "(1) the plaintiff's claim must be one arising under federal law; (2) the putative defendant must be beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction over the defendant must not offend the Constitution or other federal law." Sunshine Distribution, Inc. v. Sports Authority Michigan, Inc., 157 F. Supp.

2d 779, 788 (E.D. Mich. 2001) (quoting U.S. v. Swiss Am. Bank, 191 F.3d 30, 38 (1st Cir. 1999)). Here, there is no dispute that the first two factors are met. The Telephone Consumer Protection Act, 47 U.S.C. § 227, is a federal law. Further, Curaden AG has "acknowledged it is beyond the jurisdictional reach of any state court of general jurisdiction thus satisfying the second condition of Rule 4(k)(2)." Def. Supp. Br. at 2 (Dkt. 41).[4] Thus, the only inquiry is whether the exercise of jurisdiction over Curaden AG comports with due process under the Fifth Amendment.

The analysis here tracks the due process analysis above, although the forum is the United States, rather than Michigan. The Court first examines whether Curaden AG purposefully availed itself "of the privilege of acting in the forum state or causing consequence in the forum state." Theunissen, 935 F.2d at 1460 (citing Southern Mach. Co. v. Mohasco Indus., 401 F.2d 374, 381 (6th Cir.1968)). Even if Curaden AG did not purposefully avail itself of the privilege of acting in Michigan, it has certainly availed itself of the privilege of acting in the United States, by creating a subsidiary to market its products here.

In his supplemental briefing, Lyngaas relies heavily on Sunshine Distribution, Inc. v. Sports Authority Michigan, Inc., 157 F. Supp. 2d 779 (E.D. Mich. 2001). In Sunshine Distribution, the defendant Taiwanese corporation entered into an agreement with Razor USA, whereby Razor USA was the defendant's exclusive distributor for scooters in the United States. One of the defendant's websites referred to Razor USA as its North American subsidiary, although the defendant argued that it had no control over Razor USA's day-to-day business. The court found that the plaintiff could assert jurisdiction pursuant to Rule 4(k)(2), because the defendant had purposefully availed itself of the American market. "Defendant not only sought out and negotiated

---

[4] Lyngaas also states that "to the extent that Michigan's state long-arm statute does not apply despite the discussion in the response brief, no state statute would. Therefore, the second rule 4(k)(2) requirement is met." Pl. Supp. Br. at 3 (Dkt. 42).

a licensing agreement with Razor U.S.A. to distribute its products throughout North America, including the United States, it essentially created Razor U.S.A. for this sole purpose." Id. at 789. The court noted that the defendant's product is "only available through Razor U.S.A., its exclusive distributor[,]" and the defendant "cannot expect to rely solely on the use of an independent distributor to insulate it from suit." Id. (quoting Tobin v. Astra Pharm. Prod., Inc., 993 F.2d 528, 544 (6th Cir. 1993)).

Here, Lyngaas has shown that, like the defendant in Sunshine Distribution, Curaden AG created a U.S. subsidiary for the sole purpose of advertising and selling its products in the United States. As discussed above, Curaden USA was required to advertise and sell Curaden AG products in the United States. Curaden USA was to "use its best endeavours [sic] to promote the sale of Products throughout the Territory," which was the United States. See Johnson Dep. at 11, 16, 24. Lyngaas has sufficiently shown that Curaden USA is required to market in the United States, as Curaden AG "created, funded, and directed Curaden USA for the sole purpose of advertising and selling it[s] products in the United States and Michigan." Pl. Resp. at 14.[5]

Curaden AG argues that it has no contacts with the United States, and thus any contacts, even when aggregated, are insufficient to establish jurisdiction. Def. Supp. Br. at 3. It notes that Lyngaas "did not find any contacts, however little, with any other state. Because there is nothing to aggregate, Rule 4(k)(2) simply does not apply." Id. at 3-4. However, Curaden AG largely relies on cases where the court considered the exercise of general personal jurisdiction over a defendant. See, e.g., Abelesz v. OTP Bank, 692 F.3d 638, 660 (7th Cir. 2012) ("Rule 4(k)(2) does not help

---

[5] In contrast, the Bridgeport court noted that the plaintiff had not set forth sufficient facts "to find that NTW actually required RAL or any other party to market, distribute, or license NTW's compositions nationally, in Tennessee specifically, or elsewhere. If such is the nature of the relationship between NTW and RAL, that fact is not discernible from the record before the Court." 327 F.3d at 484 n. 11.

plaintiffs with the due process issue. . . . Plaintiffs have not shown even an arguable basis for general personal jurisdiction over [defendants]."); TruePosition, Inc. v. LM Ericsson Tel. Co., 844 F. Supp. 2d 571, 587 (E.D. Penn. 2012) ("In this case, TruePosition only claims that we may exercise personal jurisdiction over ETSI on the basis of ETSI's general contacts with the United States (general jurisdiction) rather than its claim-specific contacts (specific jurisdiction)."). The establishment of general jurisdiction requires a finding of contacts that "are so continuous and systematic" that the corporation is rendered "essentially at home in the forum State." Daimler AG v. Bauman, 134 S. Ct. 746, 751 (2014). However, Lyngaas has established specific personal jurisdiction over Curaden AG, because he has shown that Curaden AG purposefully availed itself of the United States as a whole, even if it did not purposefully avail itself of Michigan. "Even a single contact with a forum state may suffice for [specific] personal jurisdiction if it is directly and substantially related to the plaintiff's claim." Vandenberg & Sons Furniture, Inc. v. Katchen, No. 12-1021, 2013 WL 504168, at *4 (W.D. Mich. Feb. 12, 2013) (quoting Red Wing Shoe Co. v. HockersonHalberstadt, Inc., 148 F.3d 1355, 1359 (Fed. Cir. 1998)) (alterations omitted). Thus, the aggregation of contacts is irrelevant.

Curaden AG used Curaden USA to market its products in the United States. It "cannot expect to rely solely on the use of an independent distributor to insulate it from suit." Tobin, 993 F.2d at 544. Thus, the Court concludes that Curaden AG has purposefully availed itself of the United States.

The second consideration is whether Lyngaas's cause of action arises out of Curaden AG's activities in the forum state, i.e. the United States as a whole. See Homedics, Inc. v. Yejen Indus., Ltd., No. 05-70102, 2006 WL 2594918, at *5 (E.D. Mich. Sept. 8, 2006) (finding that trade dress infringement claim arose out of defendant's activities in the United States). As discussed above,

Lyngaas's alleged injuries are clearly related to Curaden AG's contacts with the United States; the fax advertisements stem from Curaden AG's creation of its U.S. subsidiary and requirement for it to advertise in the United States.

Finally, the Court considers whether it would be reasonable to exercise jurisdiction over Curaden AG. CompuServe, 89 F.3d at 1268. Here again, the Court concludes that such exercise would be reasonable, as the United States' interest in enforcing federal law and Lyngaas' interest in obtaining relief outweigh the burden on Curaden AG in defending itself in the United States.

Accordingly, the Court concludes that the exercise of personal jurisdiction over Curaden AG would be reasonable, and thus comports with due process.

### III. CONCLUSION

For the reasons provided, Defendant Curaden AG's motion to dismiss (Dkt. 16) is denied.

SO ORDERED.

Dated: March 12, 2018         s/Mark A. Goldsmith
  Detroit, Michigan        MARK A. GOLDSMITH
       United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 12, 2018.

       s/Karri Sandusky
       Case Manager