## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BRIAN LYNGAAS, D.D.S., individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | Case No. 17-cv-10910 Hon. Mark A. Goldsmith |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | |
| CURADEN AG, et al., | ) ) ) ) | |
| Defendants. | ) | |

### CURADEN AG AND CURADEN USA'S *MOTION IN LIMINE* TO EXCLUDE PLAINTIFF'S EXPERT WITNESS[1]

Defendants Curaden USA and Curaden AG hereby move this Court for an Order excluding Plaintiff's proffered expert witness Lee Howard from testifying in this case. The reasons for this Motion are set forth in the accompanying Memorandum in Support. Pursuant to LR 7.1(a), the undersigned counsel certifies that counsel personally spoke to opposing counsel, explained the nature of the relief

---

[1] LOCAL RULE CERTIFICATION: I, Brian S. Sullivan, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for nonproportional fonts) or 14 points (for proportional fonts). I also certify that it is appropriate length. Local Rule 7.1(d)(3).

sought in this Motion, and sought concurrence for the relief, but concurrence was

denied.

> Brian S. Sullivan, Esq.
> DINSMORE & SHOHL LLP
> 255 East Fifth Street, Suite 1900
> Cincinnati, Ohio 45202
> Phone: 513-977-8200
> Fax: 513-977-8141
> brian.sullivan@dinsmore.com

> *Counsel for Curaden AG and*
> *Curaden USA*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

ISSUE PRESENTED ............................................................................................. iii

CONTROLLING AUTHORITY ............................................................................ iii

MEMORANDUM IN SUPPORT ............................................................................ 1

I.     INTRODUCTION/PROCEDURAL HISTORY ........................................... 1

II.    CONTROLLING AUTHORITY .................................................................. 3

III.   ARGUMENT ................................................................................................ 5

       A.     Mr. Howard Does Not Offer a Valid Expert Opinion ........................ 5

       B.     Mr. Howard's *Third* Expert Report Still Does Not Fully Comply With
              the Requirements of Rule 26 ............................................................. 15

CONCLUSION ...................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Berry v. Crown Equipment Corp.*,
108 F.Supp.2d 743, 754-755 (E.D. Mich. 2000) .................................................. 4

*Blake v. Bell's Trucking, Inc.*,
168 F.Supp.2d 529 (D.Md. 2001) ........................................................................ 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ...................................... 3-4

*Lorraine v. Markel Am. Ins. Co.*,
241 F.R.D. 534 (D. Md. 2007) ........................................................................ 6, 14

*Pride v. BIC Corporation*,
218 F.3d 566 (6th Cir. 2000) .............................................................................. 3-4

*Roberts v. Bennett Enterprises, Inc.*,
Case No. 04-73540, 2007 U.S. Dist. LEXIS 42720 (E.D. Mich. 2007) .................. 4

*Smelser v. Norfolk Southern Railway Co.*,
105 F.3d 299 (6th Cir. 1997) .............................................................................. 3-4

*Turpin v. Merrell Dow Pharmaceuticals, Inc.*,
959 F.2d 1349 (6th Cir. 1992) ............................................................................ 4

*Tyger Constr. Co. v. Pensacola Constr. Co.*,
29 F.3d 137, 142 (4th Cir. 1994) ………................................................................ 4

**Rules**
Fed. R. Civ. P. 26(a)(2)(B) ………….................................................................. 15

Fed. R. Evid. 702 ............................................................................................... 3

## ISSUES PRESENTED

Whether Plaintiff's proffered expert witness, Lee Howard, must be excluded by this Court from serving as an expert witness pursuant to Evidence Rule 702.

## CONTROLLING AUTHORITY

- *Smelser v. Norfolk Southern Railway Co*., 105 F.3d 299, 302 (6th Cir. 1997)

- Fed. R. Evid. 702

- *Pride v. BIC Corporation*, 218 F.3d 566, 576 (6th Cir. 2000)

- *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)

## MEMORANDUM IN SUPPORT

## I.    INTRODUCTION/PROCEDURAL HISTORY

The Court's Case Management and Scheduling Order, filed March 16, 2018, set November 15, 2018 as the deadline for Plaintiff's Expert Witness Disclosure/Report. (Case Scheduling Order, Doc ID # 45). On that date, Plaintiff tendered a four page report from Christopher Lee Howard ("Mr. Howard") along with 4,290 pages of attachments. The attachments consisted almost entirely of information produced by non-party Admax Marketing. Mr. Howard's curriculum vitae was not attached to his report. The Court amended the scheduling order pursuant to the parties' request on November 27, 2018, (Amended Scheduling Order, Doc ID # 55).

The amended scheduling order gave Plaintiff until November 30, 2018 to produce his Expert Witness/Disclosure. On that date, Plaintiff sent another report from Mr. Howard that was identical to his first report, with one substantive change that was requested by the lawyers. He also attached his curriculum vitae to this report. Mr. Howard's second report was dated November 28, 2018.  Neither of Mr. Howard's reports included the mandatory requirements of Civ. R. 26.  Defendants filed a motion to exclude Mr. Howard based, in part, on these deficiencies (as well as Mr. Howard's reliance on unauthenticated records).  (Motion to Exclude Expert, Doc ID # 67).

1

On May 23, 2019, the Court filed its Opinion and Order, and agreed with Defendants that Mr. Howard's reports failed to adhere to the requirements of Civ. R. 26. (Opinion and Order, Doc. ID # 89, Page ID # 11205). However, instead of striking Mr. Howard, the Court granted Mr. Howard additional time to produce a third expert report. (*Id.*). On June 3, 2019, Mr. Howard produced a third expert report. (*See* Howard 6/3/19 Report, attached hereto (without exhibits) as Exhibit 1). This time, in addition to a six page report, Mr. Howard attached 7,629 pages to his report. However, despite receiving a third bite at the apple, Mr. Howard's report is still fatally flawed, and must be excluded.

Mr. Howard's "analysis" amounts to nothing more than looking at transmission logs allegedly created by WestFax and opining, without any evidence of how those fax transmission records were generated, that they are accurate. Mr. Howard lacks any evidence of how Westfax supposedly created the transmission logs *in this case* or what method Westfax used to either send the faxes or create the transmission logs. Mr. Howard's opinions are based entirely on unsupported speculation, and therefore his testimony must be excluded.

Additionally, even despite this Court's Order and Opinion ordering him to do so, Mr. Howard still has not fully complied with the requirements of Civ. R. 26. Mr. Howard should be excluded for failing to remedy the deficiencies with his past reports, as required by this Court's May 23, 2019 Order and Opinion.

## II.    CONTROLLING AUTHORITY

The Federal Rules of Evidence require district courts to undertake a preliminary assessment of whether the reasoning or methodology underlying proposed expert testimony is scientifically valid and whether that reasoning or methodology can be properly applied to the facts in issue. *Smelser v. Norfolk Southern Railway Co.*, 105 F.3d 299, 302 (6th Cir. 1997). In other words, Fed. R. Evid. 104(a) requires the trial court to address preliminary questions about the admissibility of expert testimony under Fed. R. Evid. 702. *Id.* at 303. Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Plaintiff, as the proponent of the expert evidence, bears the burden of showing that it is admissible. *Pride v. BIC Corporation*, 218 F.3d 566, 576 (6th Cir. 2000). Defendant does not bear the burden of demonstrating its inadmissibility.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that district courts must serve as gatekeepers to determine whether expert testimony

3

may be admitted at trial.  509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).  In order to satisfy its role as gatekeeper, a district court must first determine whether an expert has established his or her expertise by reference to his or her "knowledge, skill, experience, training, or education," then must use "a two-step inquiry which examines the expert's opinion testimony for reliability and relevance." *Pride*, 218 F.3d at 577 (6th Cir. 2000); *Smelser*, 105 F.3d at 303.  An expert opinion must be supported by "good grounds" that are based on "what is known," rather than unsupported speculation.  *Daubert*, 509 U.S. at 590; *Smelser*, 105 F.3d at 303; *see also Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record"); *Blake v. Bell's Trucking, Inc.*, 168 F.Supp.2d 529 (D.Md.2001) (Plaintiff's expert's opinion was excluded under Rule 703 where nothing in record supported his speculation that walkway ramp was free of ice and not blocked by snow).

Opinions that are "not based on sufficient facts or data, and without any basis" as well as causation opinions that are based on speculation or mere possibilities should be excluded by the trial court. *See, e.g., Berry v. Crown Equipment Corp.*, 108 F.Supp.2d 743, 754-755 (E.D. Mich. 2000); *Roberts v. Bennett Enterprises, Inc.*, Case No. 04-73540, 2007 U.S. Dist. LEXIS 42720, at *9 (E.D. Mich. 2007); *also*, *Turpin v. Merrell Dow Pharmaceuticals, Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992).

4

## III.  ARGUMENT

### A.    Mr. Howard Does Not Offer a Valid Expert Opinion.

Despite being provided multiple attempts to produce admissible expert testimony, Mr. Howard yet again offers opinions based purely on unsupported speculation about "fax transmission logs" allegedly created by Westfax[2], despite the fact that there is not a single shred of evidence from any witness with personal knowledge regarding how the transmission logs were created or what method or controls were used to generate the logs.  Mr. Howard's opinions, as a result, rely on unsupported speculation that is insufficient to satisfy the requirements of competent expert testimony under *Daubert* and its progeny.

Mr. Howard's report opines that "it is my experience that fax systems report a successful transmission as a result of having received an 'MCF' (message confirmation signal) from the receiver at the end of T.30 Phase D. Therefore, there are no instances of 'false positives.'" (*See* Exhibit 1, p. 5).  Incredibly, Mr. Howard claims he is able to determine to whom and how Westfax – the company who allegedly transmitted the faxes at issue – successfully sent faxes without any information regarding how WestFax created the fax logs at issue *in this case* or the

---

[2] Mr. Howard admitted that he is uncertain if Westfax utilized any third-parties to assist or actually transmit the faxes here. (*See* Exhibit 2, at p. 23-24).  As such, it is possible the faxes here were not even transmitted by Westfax, but were transmitted by someone Westfax hired to perform the services.

method Westfax used to send the faxes at issue or generate the fax transmission logs.[3]

Mr. Howard's opinion derives from his "analysis" of two primary documents: (1) the target database of fax numbers that Curaden USA purchased to send faxes to, and (2) the archived "transmission logs" allegedly created by Westfax (and that were produced by non-party AdMax). (*See* Exhibit 1, page 4). In reality, Mr. Howard did not express an expert opinion at all. Instead, he is being used, in place of a proper witness with personal knowledge, as a fact witness, to try and authenticate WestFax's fax transmission records.

Accuracy of electronically stored information may be impaired by incomplete data entry, mistakes in output instructions, programming errors, damage and contamination of storage media, and equipment malfunctions. *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 557 (D. Md. 2007). "The integrity of data may also be compromised in the course of discovery by improper search and retrieval techniques, data conversion, or mishandling." *Id.* The proponent of the computerized evidence has the burden of laying a proper foundation by establishing its accuracy. *Id.*

---

[3] No one from Westfax has even authenticated or verified the fax transmission logs that Plaintiff and Mr. Howard now seek to rely upon.

Here, Plaintiff has not established the integrity of the data or laid a proper foundation to establish the accuracy of the fax transmission logs that serve as the basis for Mr. Howard's opinions, and that fundamental problem cannot be remedied by having an "expert" witness review the unauthenticated document. The data—characterized by Mr. Howard as "transmission logs"—came from attachments to an email allegedly sent from Westfax to Chad Komniey, the owner of AdMax (the company Defendant Curadan USA hired to actually transmit the faxes). (C. Komniey Depo., excerpts attached hereto as Exhibit 3 at p. 176:3-21). Mr. Komniey admitted that he has no personal knowledge of how the Westfax transmission logs were created or what method Westfax used to allegedly transmit the faxes.

In fact, Mr. Komniey testified:

Q. So I assume, Mr. Komniey, you have no personal
4 knowledge as to the origin or production of that
5 spreadsheet because that's something that WestFax does
6 and you're a third party to WestFax; correct?
7 A. Correct.
8 Q. You rely upon, I get --
9 A. Yes.
10 Q. -- right?
11 A. Yes.
12 Q. And you pass that information on to the
13 customer?
14 A. Yes.
15 Q. Right. Okay.
16 And then if -- I'm just going to use an
17 example. If a WestFax piece of information says a
18 number failed, you don't know, as you sit here today,
19 when it failed or not; you just know that's what WestFax
20 told you; right?

7

21 A. That is correct.

(*Id.*).

Mr. Howard seeks to cure this obvious deficiency in his report by citing to testimony from Barry Clark, an apparent employee/owner of Westfax.[4]  However, Mr. Howard's reliance on the Clark materials is insufficient for several reasons. First, none of the documents cited in Mr. Howard's report deal with the transmission logs at issue *in this case*.  (*See* Appendixes 8-10 attached to Mr. Howard's 6/3/19 Expert Report, attached hereto as Exhibits 4-6; Excerpts from Mr. Howard's 6/13/19 Deposition, attached hereto as Exhibit 2, at p. 28).  Instead, all of the Clark materials involve unrelated litigation where Mr. Clark apparently provided testimony involving entirely different fax advertisements send by Westfax.  (*See* Exhibits 4-6).

Next, Mr. Clark's declaration involved faxes that were sent in 2008-09.  (*See* Declaration, attached hereto as Exhibit 4).  This court has already determined that such evidence is irrelevant to this case, since the faxes here were sent in 2016.  (*See* Order Granting Class Certification, Doc. ID # 89, Page ID # 11219).  As for Mr.

---

[4] Mr. Howard's report cites to three documents from Barry Clark: 1) a declaration attached as Appendix 8 to Mr. Howard's report from *St. Louis Heart Center v. Vein Centers for Excellence*, filed 29 April 2013; (2) deposition testimony attached as Appendix 9 to Mr. Howard's report from *Comprehensive Health Care Systems v. M3 USA Corporation*, given on 20 April 2017; and (3) an affidavit attached as Appendix 10 to Mr. Howard's report from *America's Health and Resource Center v. Saratoga Diagnostics*, dated 27 January 2017.  Collectively, the declaration, deposition, and affidavit are referred to herein as the "Clark materials."

Clark's deposition, Mr. Howard only reviewed five pages of the deposition transcript, and was not aware of when the faxes that were discussed in that deposition were even sent. (*See* Howard 6/13/19 Depo., attached hereto as Exhibit 2, p. 19, 23-24). As such, Mr. Howard has no basis to rely on the deposition testimony as evidence of Westfax's methods and procedures in 2016.

Mr. Howard testified that he only reviewed five pages of Mr. Clark's 108 page deposition. (Exhibit 2, p. 18). Mr. Howard cites to Page 54 of Mr. Clark's deposition and page 2 of Mr. Clark's affidavit to support his opinion that "The system follows the T.30 standard in determining a successful fax transmission through the receipt of the MCF signal (which Mr. Clark refers to as "a tone") from the recipient." (Exhibit 1, p. 5). Yet, neither the deposition nor the affidavit testimony mention "T.30" or "MCF." (*Id.*; *see also* Exhibit 2 p. 20).

As Mr. Howard conceded:

Q· Would you agree with me that nowhere in these two answers on
page 54 does Mr. Clark use the phrase "T.30"?
A· That's correct.
Q· Where does he use the phrase "MCF signal"?
A· He doesn't.

(*Id.*). Instead, Mr. Howard admitted at his deposition that he "interpreted" Mr. Clark's testimony – from entirely different cases involving entirely different faxes that may have been sent prior to the faxes here – to conclude that Westfax must have been using T.30 and MCF to send faxes.

9

However, had Mr. Howard actually read the entirety of Mr. Clark's deposition, he would have discovered that Mr. Howard testified numerous times that Westfax's method for transmitting faxes is proprietary, and Mr. Clark refused to divulge important information about how Westfax transmits faxes. For instance, Mr. Clark explained:

```
12        Q.    And we'll get into this in more detail later
13   too.  But when you say "provided fax -- fax broadcast
14   service," generally, what does that mean within the way
15   that WestFax's -- the way WestFax operates?
16        A.    We send faxes for customers as previously
17   described.
18        Q.    And how is that accomplished?
19        A.    Through our proprietary technology.
```

(Exhibit 5, at p. 10: 16-17).

Later in the deposition, Mr. Clark's attorney instructed him not to answer a line of questions about Westfax's technology, because "Westfax has a very simple policy that it doesn't discuss or answer any questions regarding its proprietary software or technology." (*Id.* at p. 19: 6-8).

Mr. Clark also recognized that "There are several different ways that you can receive a fax. A very common way of receiving a fax is as an e-mail attachment. The proliferation of what's called fax to e-mail is very significant in the sending of

10

fax transmissions in modern society." (*Id.* at p. 90: 1-5).[5] If Mr. Howard looked beyond the cherry picked pages of Mr. Clark's deposition, he would have discovered that Westfax has developed proprietary technology for its fax transmissions. And, because Mr. Howard has, by his own admission, no idea how Westfax's proprietary system works, he has no basis to draw broad conclusions about the methods Westfax may rely on or whether those methods produce accurate transmission logs.

Mr. Howard's opinion that Westfax's transmission logs are accurate is supported by even less evidence that his conclusions about the methods employed by Westfax to transmit faxes. Mr. Howard's sole support for his conclusion that Westfax's transmission logs *in this case* are accurate is from pages 68-69 of Mr. Clark's deposition and page five of his affidavit. (Exhibit 1, p. 5).

On pages 68-69 of his deposition, Mr. Clark testified:

---

[5] This testimony is especially significant, as Mr. Howard himself wrote an article in 2012 explaining that, in the future, he anticipated technology developing that would allow faxing to take place entirely through the Internet (i.e. without a regular telephone line). (*See* Exhibit 2, p. 42). Mr. Howard seems to conclude that because he and his companies have not developed technology to send faxes entirely over the Internet, it does not exist. But, Mr. Howard has no basis to conclude that Westfax has not developed such technology, or that such technology was not used, in whole or in part, to transmit the faxes in this case. This again highlights the deficiencies with Mr. Howard's opinion and the lack of any evidence from Westfax regarding the fax transmission logs *in this case*.

```
11        Q.    (BY MR. COHEN)  And if you've done it enough
12   that you feel you have an adequate basis to say, "Our
13   system works correctly and it generates reliable
14   information."
15        A.    Our system works correctly.
16        Q.    And is the information it generates reliable?
17        A.    Yes.
```

(Exhibit 5, p. 68: 11-17). Mr. Clark provided no explanation for how Westfax's systems work or how its transmission logs are generated. Nor did he provide any detail regarding how – or if – any testing or quality control is performed to evaluate the results. Instead, the entirety of his testimony (and the full extent of support for Mr. Howard's opinion), is Mr. Clark's one-line declaration that Westfax's information is reliable.

Similarly, in his affidavit, Mr. Clark stated:

> 23.    There were no reported problems identified by the Westfax broadcasting platform relating to the fax broadcasts performed on behalf of Saratoga and the records relating to those fax broadcasts on behalf of Saratoga produced pursuant to subpoena in this case, are accurate.

(Barry Clark Affidavit, Appendix 10 to Lee Howard's Report, attached hereto as Exhibit 6, at p. 5). As an initial matter, Mr. Clark's affidavit made it clear that he was referring to the accuracy of the information "produced pursuant to subpoena in this case," as opposed to opining on the overall reliability of Westfax's records.

12

(*Id.*).  And, like his deposition, Mr. Clark did not provide any explanation regarding any testing or quality control that is performed to evaluate Westfax's results.

Finally, Mr. Howard admitted he was not provided with numerous documents that would be important to his opinions.  First, Mr. Howard testified that he had no knowledge of whether Westfax used third parties as part of its services. Significantly, Mr. Howard conceded that with regards to information about whether Westfax used third parties : "Q· I assume you would agree with me, Lee, that would be important to you if you knew that one way or the other?  **A· If that information became available, it would be important to know, yes."**  (Exhibit 2, pp. 24-25).

Mr. Howard similarly agreed that he did not have evidence of Westfax's methods for sending the faxes in this case (assuming Westfax was even the party who actually transmitted the faxes here).  (*Id.* at p. 25-26).  And, again, Mr. Howard conceded:

> 25· ·Q· (By Mr. Sullivan)· I assume that you would easily agree
> ·1· · · that that would be important for you to know in rendering
> ·2· · · an opinion what WestFax's operations actually were like
> ·3· · · when these faxes in our case were sent out, correct?
> **·4· ·A· If that information became available, yes, it would be**
> **·5· · · important.**

(*Id.*).

Lastly, Mr. Howard recognized that in Mr. Clark's declaration, deposition testimony, and transcript, Mr. Clark had access to and relied on Westfax invoices as part of his testimony.  (*Id.* at pp. 28, 30).  No such invoices have been produced in

13

this case. (*Id.*). And, Mr. Howard again conceded that such information would "be something you would want to know as an expert." (*Id.* at pp. 30-31).

Mr. Howard has not opined (nor can he) or cited testimony regarding how Westfax's system worked (beyond his broad conclusion that Westfax utilized ITU T.30), who was responsible for maintaining the fax software, or whether and what kind of quality control tests were done to check whether or not statuses that were reported as delivered were, in fact, delivered.

Mr. Howard knows nothing about Westfax's broadcasting software. (Exhibit 2 at pp. 25-26, 28). He has never tested the reliability or accuracy of Westfax's faxing software, nor is there any evidence that he has seen any independent test, audit, or review of Westfax's faxing software. (*Id.*). There is no evidence that Westfax's software has been tested by different users; there is no evidence it has been peer reviewed or that there has been any other scientific review of the apparently proprietary software. There may be errors in the system, but Mr. Howard has been provided with no evidence of how Westfax's system even worked, so he clearly has no ability to evaluate potential technical difficulties with the software.

Mr. Howard is ignorant of any safeguards that Westfax may have put in place to ensure the accuracy and authenticity of the data at issue in this case. *See Lorraine*, 241 F.R.D. at 545. Mr. Howard's opinions rely entirely on his unsupported speculation that the Westfax logs are accurate. But, Mr. Howard lacks personal

14

knowledge of how the logs were created, and the record is devoid of any evidence of how the transmission logs in this case were created. As a result, Mr. Howard's opinions are unfounded and inadmissible.

### B. Mr. Howard's *Third* Expert Report Still Does Not Fully Comply With the Requirements of Rule 26.

Although Plaintiff seeks to hold Defendants strictly liable for over $30 million, at most, minor violations of the TCPA, Plaintiff apparently believes that it's expert can pick and choose the requirements of Civ. R. 26(a)(2)(B) with which he is actually required to comply. But, the requirements in Civ. R. 26(a)(2)(B) are mandatory, and Plaintiff's Expert's failure to satisfy all of these requirements, even after being given an opportunity to fix his prior deficiencies, is not substantially justified or harmless.

As this Court is aware, Defendants previously moved to exclude Mr. Howard as an expert because his expert report failed to comply with the straightforward and routine requirements of Civ. R. 26. (*See* Doc ID # 67). This Court agreed that Mr. Howard's report did not satisfy the requirements of Civ. R. 26, but gave him a chance to remedy the deficiencies.

However, Mr. Howard's revised report still does not satisfy the requirements of Civ. R. 26. First, Mr. Howard's revised report includes a list of other cases where he served as an expert witness at trial or by deposition, but Mr. Howard did not (and could not at his deposition) identify which cases were from the past four years, as

15

the rule requires.  (*See* Exhibit 2, p. 7).  Mr. Howard's failure to identify cases from the past four years impeded Defense counsel's ability to search for and review relevant testimony from past cases, particularly since Defense counsel had only ten days between June 3, when Mr. Howard produced his revised report, and June 13 to prepare for his deposition.

More significantly, Mr. Howard was ordered to attach "a list of all publications authored in the previous 10 years" to his revised report.  And, while Mr. Howard purported to attach several thousands of pages of works he "authored" to his report, at his deposition he admitted that, for Appendices 2 and 4, he did **not** actually author everything he attached to his report.  Additionally, Mr. Howard was even unable to isolate the portions of the materials in Appendices 2 and 4 that he actually authored.  (Exhibit 2 at pp. 7-8, 10).

As a result, Defense counsel was forced to review thousands of pages of documents that Mr. Howard (falsely) claimed to have authored in preparation for his deposition.  Then, at the deposition, Mr. Howard was unable to even identify which portions of the pages he himself selected and attached to his revised report were actually his own work.  Defense counsel was clearly hamstrung in its ability to effectively question Mr. Howard about works he "authored" when Mr. Howard himself could not identify such works.

Based on Mr. Howard's basic failures to comply with Civ. R. 26(a)(2)(B), even after being provided a chance to remedy his previous deficiencies, the court should invoke Rule 37 and excluded him as an expert witness.

## CONCLUSION

For the foregoing reasons, Curaden USA and Curaden AG respectfully request that Lee Howard, Plaintiff's Expert Witness, be excluded.

Respectfully submitted,

s/ Brian S. Sullivan
Brian S. Sullivan, Esq.
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Phone:      513-977-8200
Fax:        513-977-8141
brian.sullivan@dinsmore.com

17

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served via e-mail through the Court's CM/ECF Electronic Filing System this 24th day of June, 2019, upon the following:

Richard Shenkan, Esq.
SHENKAN INJURY LAWYERS, LLC
6550 Lakeshore St.
West Bloomfield, MI 48323
rshenkan@shenkanlaw.com

Phillip A. Bock, Esq.
Robert M. Hatch, Esq.
David M. Oppenheim, Esq.
Tod A. Lewis, Esq.
BOCK, HATCH, LEWIS &
OPPENHEIM, LLC
134 N. La Salle Street, Suite 100
Chicago, IL 60602
phil@classlawyers.com
robert@classlawyers.com
david@classlawyers.com
tod@classlawyers.com

/s/ Brian S. Sullivan

18