UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN LYNGAAS, D.D.S.,
individually and as the
representative of a class of
similarly situated persons,

        Plaintiff,

                                      Case No. 17-10910

v

                                      HON. MARK A. GOLDSMITH

CURADEN AG, et al.,

        Defendants.
_____/

**OPINION & ORDER**
**GRANTING IN PART PLAINTIFF'S**
**MOTION FOR ENTRY OF JUDGMENT (Dkt. 138)**

This matter is before the Court on Plaintiff Brian Lyngaas's motion for entry of judgment seeking approval of his proposed judgment, claim form, and notice of judgment (Dkt. 138). This motion has been fully briefed. Because oral argument will not assist in the decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). For the reasons discussed below, the Court grants Lyngaas's motion for entry of judgment, but requires certain modifications of the proposed claim form and notice of judgment.

**II. BACKGROUND**

In this class action, Lyngaas asserted that on March 8 and March 28, 2016, he received unsolicited fax advertisements from Defendants Curaden AG and Curaden USA, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The Court conducted a bench trial on September 18 and September 19, 2019.

1

Following trial, the Court entered an opinion and order setting forth its findings of fact and conclusions of law. See generally 11/21/19 Op. (Dkt. 129). In the opinion, the Court held that Lyngaas established that Curaden USA violated the TCPA by sending two unsolicited fax advertisements to him individually and by broadcasting the advertisements in two mass fax campaigns. Id. at 34. However, because Lyngaas did not establish the total number of faxes sent class-wide, the Court held that a claims administration process was necessary to afford potential class members the opportunity to establish their receipt of Curaden USA's unsolicited faxes. Id. at 35. As for Curaden AG, the Court held that Lyngaas failed to establish its liability under the TCPA. Id. at 10-17.

Although the parties were to confer regarding the details of the claims administration process, the Court set forth a basic framework for the process. Specifically, claim forms were to be distributed in the same manner that class notice was disseminated. Id. at 36-37. The claim form would require claimants to submit sworn affidavits attesting to their names, contact information, and the number of unsolicited faxes they received from Curaden USA. Id. at 37. The claims administrator was to verify the information contained in each claim form and affidavit with the information contained in "target lists"—documents provided by Curaden USA to AdMax Marketing ("AdMax") identifying fax numbers to be targeted in the fax broadcasts. Id. The claims administrator was to employ a summary decision process to resolve any potential disputes regarding a claimant's status as a class member. Id. Although Curaden USA would be entitled to participate in the claims administration process, the Court stated that it would not be entitled to discovery or trial regarding an individual claimant's status as a class member. Id.

The parties conferred regarding the details of the claims administration process; however, several disputes have arisen regarding the process and the contents of Lyngaas's proposed claim form and notice of judgment. Those issues are addressed below.

## III. DISCUSSION

### A. Due Process

Curaden USA raises two separate due process challenges to the claims administration process set forth by the Court. First, Curaden USA contends that the claims administration process would premise class membership determinations on potentially unreliable claim forms and affidavits—without affording Curaden USA its due process right to meaningfully participate in the process by raising individual challenges and by conducting discovery regarding individual claims. Second, Curaden USA contends that the claims administration process would deprive it of its due process right to have the scope of its liability determined by the Court as opposed to a claims administrator.

It is well settled that where determinations regarding individual class members' entitlement to damages will impact the defendant's total liability for damages, the defendant's due process rights are implicated. Mullins v. Direct Digital, LLC, 795 F.3d 654, 658, 671 (7th Cir. 2015). Under such circumstances, a defendant "must be given the opportunity to raise individual defenses and to challenge the calculation of damages awards for particular class members." Id. Consequently, the Court must evaluate whether the claims administration process outlined in the Court's order would adequately protect Curaden USA's due process rights.

The Court's prior order outlined a claims administration process by which claimants must submit claim forms and affidavits "attesting to the following information: (1) their name, (2)

3

their contact information, including fax number and address, (3) their receipt of a fax from Curaden USA on March 8, 2016 and/or on March 28, 2016, and (4) that they did not expressly invite or permit Curaden USA to send them faxes." 11/21/19 Op. at 37. The Court provided that this information would be verified by reference to the information reflected on the target lists. Id. In the event the parties dispute a claimant's status as a class member, the claims administrator would establish a summary decision process. Id. Completed claim forms and affidavits that are consistent with the information in the target lists would be paid, while incomplete or inconsistent claim forms and affidavits would be denied. Id. at 38.

Under this framework, class membership determinations would be premised not only on claimants' claim forms and affidavits, but also on target lists identifying the fax numbers Curaden USA sought to include in its fax broadcasts. The use of affidavits as a mechanism for establishing class membership has been approved by many courts. Indeed, "a district judge has discretion to allow class members to identify themselves with their own testimony and to establish mechanisms to test those affidavits as needed." Mullins, 795 F.3d at 669; see also Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1131 (9th Cir. 2017) ("At the claims administration stage, parties have long relied on claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court' to validate claims." (internal quotation marks omitted)); 3 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 10:12 (4th ed. 2002) ("Methods of claim verification may also vary with the ease of documenting claims by individual members, and also with the size of the claims involved. A simple statement or affidavit may be sufficient where claims are small or are not readily amenable to verification."). Even if an affidavit contains a false claim, a defendant's due process rights are protected "so

long as the defendant is given a fair opportunity to challenge the claim to class membership and to contest the amount owed each claimant during the claims administration process." Mullins, 795 F.3d at 671.

In City Select Auto Sales, Inc. v. BMW of N. Am. Inc., 867 F.3d 434 (3d Cir. 2017), the Third Circuit considered a method of identifying class members similar to the one established by the Court in the present action. In City Select, although a customer database identified all possible recipients of the faxes at issue, the database included more entries than the number of faxes sent. Id. at 441. The Third Circuit held that affidavits from potential claimants regarding class membership, in combination with a customer database identifying "a limited set of potential claimants," could provide an administratively feasible means of determining class membership. Id. at 441-442.

As argued by Curaden USA, the use of self-identifying affidavits to establish class membership was rejected by the Third Circuit in Carrera v. Bayer Corp., 727 F.3d 300, 309 (3d Cir. 2013).[1] See also Marcus v. BMW of N. Am., 687 F.3d 583, 594 (3d Cir. 2012). However, Carrera rejected "reliance on affidavits alone, without any objective records to identify class members or a method to weed out unreliable affidavits . . . ." Byrd v. Aaron's Inc., 784 F.3d 154, 170 (3d Cir. 2015) (emphasis added). In the present case, by contrast, class membership

---

[1] Carrera, as well as many cases examining the due process implications of establishing class membership, concerned the ascertainability element of class certification. See 727 F.3d at 307. Carrera adopted a "heightened ascertainability" standard at the class certification stage, which required plaintiffs to demonstrate that there is a reliable and "administratively feasible" method for determining whether someone is in the class. 727 F.3d at 307-308. Many courts, including the Sixth Circuit, have sharply criticized this standard. See Rikos v. Procter & Gamble Co., 799 F.3d 497, 525 (6th Cir. 2015); Mullins, 795 F.3d at 658 (holding that Carrera has the "effect of barring class actions where class treatment is often most needed: in cases involving relatively low-cost goods or services, where consumers are unlikely to have documentary proof of purchase"). Given that the present case is well past the class certification stage, however, discussion of the heightened ascertainability standard is irrelevant to this decision.

will not be premised solely on claim forms and affidavits but also on objective records—namely, the target lists.

Further, Carrera's rejection of affidavits as a means of establishing class membership has been roundly criticized by other courts. See Mullins, 795 F.3d at 669 (holding that although a defendant has a due process right to challenge the plaintiffs' evidence at the claims or damages stage, "[t]hat does not mean a court cannot rely on self-identifying affidavits, subject as needed to audits and verification procedures and challenges, to identify class members"). Accordingly, the Court is persuaded that establishing class membership through claim forms and affidavits, which will be subject to verification by reference to the target lists, is well supported under the law.

The claims administration process outlined by the Court also affords Curaden USA the opportunity to raise individual defenses and to challenge claimants' status as class members through the summary decision process. During the summary decision process, the claims administrator must provide Curaden USA a reasonable opportunity to raise objections to the evidence supplied by a claimant and to present its own counter-evidence (e.g., that the individual granted Curaden USA permission to receive a fax). Although Curaden USA seeks to take individual discovery, it does not describe with any specificity what type of discovery it seeks, either in the present briefing or in its post-trial briefing. See Curaden USA Opp'n Br. at 5-6 (Dkt. 139); Defs. Post Trial Br. at 23-24 (Dkt. 118). Moreover, the potential utility of individual discovery appears remote. If claimants were deposed regarding their receipt of faxes, those individuals would likely reiterate the information already contained in their claim forms and affidavits—which must be certified under penalty of perjury. Meanwhile, evidence probative of

6

individual defenses, particularly with respect to a claimant's permission to send the faxes, would likely be in Curaden USA's own possession.

Finally, Curaden USA contends that due process requires that the Court, and not a claims administrator, retain final decision-making authority regarding the scope of liability. The Court has already determined that Curaden USA is liable on a class-wide basis. Therefore, all that remains is to determine class membership, which will then determine the full extent of damages owed. As explained above, these issues may be resolved during a claims administration process as long as the defendants are afforded the opportunity to challenge the claims to class membership and the amount of damages owed. Mullins, 795 F.3d at 671. Further, this Court will be the ultimate decision-maker should either party object to the determinations of the claim administrator. Within thirty days after the completion of the determination of claims by the claims administrator, either party may file a motion to reopen the case to seek a ruling regarding any objections to the claims administrator's rulings.

Accordingly, the Court finds that Curaden USA's due process rights are adequately protected under the claims administration process.

**B. Use of Summary Report Logs**

Next, Curaden USA objects to Lyngaas's anticipated use of summary report logs for the following two purposes: (1) to determine the potential claimants to whom the claim forms and affidavits will be sent, and (2) to pre-populate the proposed claim forms and affidavits with potential claimants' information. Because the Court ruled that the summary report logs were inadmissible given Lyngaas's failure to establish their reliability, 11/21/19 Op. at 24, Curaden USA maintains that the information contained in these reports should not be used as the basis for determining class membership.

The Court ordered that claim forms and affidavits would be distributed to potential class members in the same manner that class notice was disseminated: by sending them "'to each of the fax numbers identified as having been sent one or more of the faxes at issue in this case . . . .'" Id. at 36 (quoting 7/3/19 Order at 5 (Dkt. 100)). Class counsel sent class notice to the fax numbers identified by the summary report logs as having successfully received one or both of the fax transmissions at issue; the notice was successfully sent to 30,074 persons, nine of whom opted out. Pl. Mot. at 11; 7/22/19 Merryman Aff. ¶ 10 (Dkt. 106); 10/11/19 Merryman Aff. ¶ 5 (Dkt. 117).

Distribution of claim forms and affidavits need not be confined only to persons likely to be class members. In many cases, notices of settlement are published nationally and claim forms are made generally available to the public. See, e.g., Low v. Trump Univ., LLC, 246 F. Supp. 3d 1295, 1311 (S.D. Cal. 2017) (approving the publication of settlement notice in the national edition of USA Today and the posting of all settlement-related documents on the settlement website); Allan v. Realcomp II, Ltd., No. 10-cv-14046, 2014 WL 12656543, at *3 (E.D. Mich. May 29, 2014) (approving the publication of settlement notice in the Detroit Free Press); Mahan v. Trex Co., Inc., No. 09-cv-00670, 2013 WL 12173034, at *4 (N.D. Cal. Aug. 27, 2013) (approving the publication of settlement notice in the national edition of USA Today and the posting of claim forms on the defendant's public website and on the settlement website).

Here, rather than the claim forms and affidavits being made generally available to the public, they will be distributed to a far narrower audience composed of individuals who are reasonably believed to be class members. Admissible target lists establish the universe of fax numbers originally supplied by Curaden USA to AdMax to be targeted in the fax broadcasts. Meanwhile, the summary report logs identify a subset of the fax numbers on the target lists that

Lyngaas suspects successfully received the faxes at issue. Thus, Lyngaas seeks to refine the target lists by reference to the summary report logs and to exclude from distribution the fax numbers that are not suspected to have received the faxes. Far from resulting in prejudice to Curaden USA, exclusion of these fax numbers on the basis of the summary report logs will insulate Curaden USA from a greater risk of mistaken or fraudulent claims.

The fact that the summary report logs were inadmissible at trial to establish the aggregate number of faxes sent class-wide is immaterial. First, Curaden USA cites no authority requiring that distribution of claim forms and affidavits be made only to individuals identified by reference to admissible evidence. Second, Lyngaas seeks to use the summary report logs simply as a means to distribute claim forms and affidavits and not to establish damages. Determinations regarding class membership and the aggregate amount of damages will not be premised on the summary report logs but rather on properly completed claim forms and affidavits, which will then be verified by reference to admissible target lists. Because the scope of Curaden USA's ultimate liability will not be premised on the summary report logs, the use of these reports for the limited purpose of distributing claim forms is unobjectionable.

With respect to the contents of the claim form, the Court stated in its opinion that claimants must submit sworn affidavits attesting to their name, fax number, address, and the number of faxes received from Curaden USA. 11/21/19 Op. at 37. Lyngaas's proposed claim form would pre-populate this information based on data drawn from the summary report logs. Proposed Claim Form at 2, Ex. B to Pl. Mot. (Dkt. 138-2). The claimant would then be directed to review the information and either (1) verify under penalty of perjury that the information is correct, or (2) correct the information and verify under penalty of perjury that the revised information is correct. Id.

Requiring claimants to affirmatively provide their identification and contact information would add a layer of verification—thereby lessening the possibility of a mistaken or false claim being processed—and it would not be overly burdensome for claimants. Consequently, claimants will be required to supply this information, rather than simply verify information contained in pre-populated fields.

### C. Claims Administrator

Lyngaas proposes using Class-Settlement.com as a claims administrator, as class counsel have worked with this administrator in over twenty TCPA class actions, and have found its work to be reliable and professional. Pl. Mot. at 13. Curaden USA objects to the selection of an administrator with whom class counsel have a longstanding relationship, arguing that the administrator may not be impartial. But the mere fact that Class-Settlement.com has handled claims administration processes in a number of class actions involving class counsel does not establish that it would be biased in performing its obligations in this case. In addition, given that the work to be performed by the claims administrator is essentially ministerial and that the Court, in any event, will ultimately resolve any disputes regarding decisions made by the claims administrator, there can be no serious concern with partiality. Further, had Curaden USA genuinely harbored such a concern, it should have proposed an alternative claims administrator, which the Court could have considered. Thus, the Court approves Class-Settlement.com to serve as the claims administrator.[2]

---

[2] While the Court has approved Lyngaas's proposal that Class-Settlement.com be selected as the claims administrator, Lyngaas has not furnished any retention agreement or the compensation terms. Therefore, the Court does not ratify any such agreement or terms at this time. It will require Lyngaas to establish the reasonableness of any such arrangement when the reasonableness of other costs is later addressed.

### D. Incentive Award

Lyngaas's proposed notice of judgment states that class counsel will request the Court's approval of a $15,000 incentive award to Lyngaas, to be funded from their attorney fees. Proposed Claim Form at 4. Curaden USA objects to an incentive award on the ground that it has not agreed to pay any amount above and beyond its liability for statutory damages under the TCPA. Curaden USA also objects to the amount of the award sought.

Curaden USA is correct that an incentive award is "plainly inappropriate" in circumstances where there is neither an agreement between the parties regarding an award nor a common fund from which to draw the award. See Hadix v. Johnson, 322 F.3d 895, 898-899 (6th Cir. 2003) (declining to approve an incentive award that would compel the defendants "to take on the additional burden . . . above and beyond the liabilities they had agreed to in the consent decree settling the lawsuit"). However, Lyngaas asserts that an incentive award would be funded from the ultimate class recovery. Pl. Reply at 5 (Dkt. 143). The parties, therefore, agree that an incentive award would not be collected from Curaden USA as an additional liability.

Further, given that any incentive award would be drawn from the class recovery, Curaden USA lacks standing to object to the amount of the incentive award, as it has no interest in the matter. See Tennille v. W. Union Co., 809 F.3d 555, 559 (10th Cir. 2015) (holding that a defendant lacked standing to challenge an attorney fee award, as "[g]enerally, a settling defendant in a class action has no interest in the amount of attorney fees awarded when those fees are to be paid from the class recovery rather than the defendant's coffers"). Thus, the Court rejects Curaden USA's objections regarding the amount of a potential incentive award.

### E. Costs of Claims Administration

Lyngaas asserts that the costs of the claims administration process will ultimately be deducted from the class recovery as a litigation expense. Pl. Mot. at 14. However, Lyngaas proposes that both parties share in the upfront costs of claims administration and that Curaden USA's portion be credited toward its ultimate liability. Id. Curaden USA objects to this proposal on the ground that costs associated with claims administration are not recoverable.

Although Federal Rule of Civil Procedure 54(d) permits prevailing parties to be reimbursed for their "costs," that recovery is limited under 28 U.S.C. § 1920 to the following types of nontaxable costs: (1) fees of the clerk and marshal, (2) fees of the court reporter, (3) fees and disbursements for printing and witnesses, (4) fees for exemplification and copies of papers necessarily obtained for use in the case, (5) docket fees, and (6) compensation of court appointed experts and interpreters. Hadix, 322 F.3d at 899-900 (denying the plaintiff's request for reimbursement of the cost of postage, supplies, copying, and word processors).

None of the enumerated categories set forth in 28 U.S.C. § 1920 encompasses the costs of claims administration. Therefore, Lyngaas is not entitled to share the costs of claims administration with Curaden USA. Although Lyngaas contends that the claims administration costs would ultimately be credited toward Curaden USA's liability, the interests of equity would be better served if class counsel funded the upfront outlay for claims administration in a class action that they initiated and for which they seek attorney fees. The Court will later determine how these costs will ultimately be borne.

### F. Claims Period

Lyngaas has proposed a claims period of 120 days—the same duration permitted in Krakauer v. Dish Network, LLC, No. 14-cv-333, 2019 WL 3002883, at *2 (M.D.N.C. July 10,

2019). Curaden USA, however, argues that this period is too long, given that the opt-out period was limited to thirty days. See 7/3/19 Order at 5-6. Additionally, Curaden USA objects to permitting class members to submit their claims online, arguing that the means of submitting a claim are broader than the means for potential class members to opt out.

Curaden USA has not cited any authority stating that a claims period must be similar in duration to an opt-out period. Nor has it identified authority stating that the means for submitting claim forms must be identical to those employed for submitting opt-out requests. Indeed, the right to opt out is not intended to insulate defendants from liability but rather to protect potential class members who do not wish to be bound by a class judgment. See Fed. R. Civ. P. 23(c)(2)(B); see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Nevertheless, a claims period of 120 days in this action is excessive. Whereas the claim form used in Krakauer required claimants to submit documentation in support of their claims, the proposed claim form in this case is far less burdensome. See No. 14-cv-333, 2017 WL 3206324, at *8 (M.D.N.C. July 27, 2017). Therefore, a period of sixty days is sufficient to permit claimants to submit their claim forms and affidavits. Further, the Court does not consider Lyngaas's proposed means of submitting claim forms and affidavits to be objectionable.

### G. Claim Form Language

Curaden USA contends that certain language in Lyngaas's proposed claim form is misleading. First, the proposed claim form is entitled, "Claim Information Form and Notice of Judgment," which, Curaden USA argues, erroneously suggests that a judgment has already been entered in the claimants' favor. See Proposed Claim Form at 1, 3. This objection is without merit, given that a final judgment will be entered by the Court before the claim forms and

affidavits are sent to potential class members. Therefore, the "Notice of Judgment" language is not misleading and should not be removed from the proposed claim form.

Second, Curaden USA objects to certain portions of the proposed claim form that are drafted in mandatory terms, arguing that claimants may believe they are being compelled by court order to submit a claim form. As drafted by Lyngaas, the proposed claim form states:

> The Court has determined that Curaden USA, Inc. ("Curaden USA") sent two advertisements by fax in March 2016 in violation of the Telephone Consumer Protection Act. All persons who received those faxes without their prior express permission can now claim damages of $500 per fax, up to $1,000 for two faxes. Records in the case indicate that you or your company may qualify. <u>But you must complete and submit the Claim Information Form below to collect your damages for receiving the faxes</u>.

Id. at 1 (emphasis added). Later, the proposed claim form instructs claimants to sign it: "You must sign this Claim Information Form (electronically or on paper) and submit it by [date]." Id. at 2. The proposed notice of judgment states, "You must complete and submit the Claim Information Form to be entitled to receive money for receiving one or more advertisements by fax from Curaden USA." Id. at 3.

This language clearly indicates that claimants are required to complete a claim form and affidavit in order to collect damages to which they may be entitled. Nothing about the language implies a court-ordered obligation to complete a claim form and affidavit. Curaden USA suggests the following alternative language: "If you received a fax from Curaden USA in March 2016 and if you would like to make a claim, then you must complete and submit the Claim Information Form below so that your claim can be evaluated to determine if you qualify for damages for receiving a fax." Redline Proposed Claim Form at 1. The language as drafted by Lyngaas is simpler and more straightforward—one of the goals in preparing a claim form. See 4

14

William B. Rubenstein, Newberg on Class Actions § 12:15 (5th ed. 2017). Therefore, the Court approves the language proposed by Lyngaas.

Finally, Curaden USA argues that the claim form and affidavit should require claimants to provide a brief description of the faxes that they received from Curaden USA. See Redline Proposed Claim Form at 3, Ex. D to Pl. Mot. (Dkt. 138-4). Such a requirement, however, would likely create confusion among potential class members regarding the precise information being requested. Such a requirement, therefore, would undermine the efficiency and simplicity of the claims administration process. Indeed, courts must "[a]void imposing unnecessary hurdles on potential claimants" and must be "careful to avoid claim forms that scare class members away with confusing questions and onerous proof requirements." 4 Rubenstein, Newberg on Class Actions § 12:21 (citation and internal quotation marks omitted). Therefore, requiring claimants to describe the faxes is not warranted.

## IV. CONCLUSION

The Court grants in part Lyngaas's motion for entry of judgment (Dkt. 138) but requires modification of the proposed claim form and notice of judgment consistent with this Opinion and consistent with the approved notice of judgment, claim form and affidavit, and notice of additional information attached as Exhibit 1 to the order of judgment that will be entered separately.

SO ORDERED.

Dated: January 30, 2020  
     Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge