UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN LYNGAAS, D.D.S.,
individually and as the representative
of a class of similarly situated persons,

    Plaintiff,

v.

CURADEN AG, et al.,

    Defendants.
_____/

Case No. 17-cv-10910

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**GRANTING IN PART PLAINTIFF'S MOTION FOR LITIGATION EXPENSES,**
**ATTORNEY FEES, AND NAMED PLAINTIFF INCENTIVE AWARD (Dkt. 174)**

This Court entered judgment in favor of Plaintiff Brian Lyngaas, D.D.S.—who brought this action both individually and as the representative of a class of similarly situated persons—against Defendant Curaden USA, Inc. (Dkt. 146). Lyngaas now moves for litigation expenses, attorney fees, and a named plaintiff incentive award out of the total recovery of $907,500 (Dkt. 174). For the reasons that follow, the Court grants Lyngaas's motion in part, modifying his requested relief to award (i) $96,490.78 in litigation expenses; (ii) $3,000 to Lyngaas in his role as class representative, to be paid from the total amount recovered; and (iii) $202,002.31 in attorney fees, equal to 25% of the total recovery after the subtraction of attorney fees and the class representative award.[1]

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). Lyngaas's unopposed motion includes a memorandum in support of his motion. After reviewing Lyngaas's motion, the Court ordered Lyngaas to file a supplemental memorandum and an affidavit or declaration in support of certain of his claims, see 6/3/22 Order (Dkt. 175), which Lyngaas did on June 13, 2022 (Dkts. 176, 176-1).

1

## I. BACKGROUND

Lyngaas brought this class action based on unsolicited faxes advertising dental products that Curaden and its parent, Curaden AG, allegedly sent to dental offices in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA) (Dkt. 1). Following a bench trial, the Court found that Curaden (but not its parent) was liable for violating the TCPA and ordered that a claims administration process be established so that an award amount could be fixed and distributed to eligible class members. 11/21/19 Order at 35–39 (Dkt. 129). The Court subsequently entered a final judgment in favor of the class against Curaden in an amount to be determined through the claims administration process. See Final Judgment at 1–3.[2] The United States Court of Appeals for the Sixth Circuit affirmed this judgment. Lyngaas v. Ag, 992 F.3d 412, 438 (6th Cir. 2021).

Lyngaas filed a declaration from the administrator of the claims process stating that 919 class members had claimed receipt of 1,815 total violative fax transmissions. See Decl. of Dorothy Sue Merryman ¶ 17 (Dkt. 159). Because Curaden was liable for $500 per violative transmission under the TCPA, the Court found that Curaden was liable to the class for a total of $907,500. See 12/21/21 Op. & Order at 7 (Dkt. 173) (citing 47 U.S.C. § 227(b)(3)(B)).

The Court also allowed Lyngaas to file a renewed motion for attorney fees, an incentive award, and/or litigation costs. Id. at 8. The motion presently before the Court followed.

---

[2] The judgment also allowed Lyngaas to file any motion seeking an award of attorney fees and costs to class counsel. Id. at 3. Lyngaas filed a motion for litigation expenses, attorney fees, and an incentive award (Dkt. 147). The Court issued an order finding that class counsel was entitled to a fee payment, but that "due to the uncertain nature of the case's result, it would be premature to determine how that payment will be calculated." 9/3/20 Op. & Order at 4 (Dkt. 157).

## II. ANALYSIS

Lyngaas requests that the Court (i) award class counsel $96,490.78 in litigation expenses; (ii) award class counsel one-third of the total recovery of $907,500—that is, $302,500; and (iii) authorize class counsel to pay an incentive award of $15,000 to Lyngaas for serving as the class representative, taken from monies that would otherwise be attorney fees. Pl. Mem. in Supp. Mot. at 15. The Court addresses each request in turn.

### I. Litigation Expenses

"In common fund type cases, as here, generally class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs." Allan v. Realcomp II, Ltd., No. 10-cv-14046, 2014 WL 12656718, at *2 (E.D. Mich. Sept. 4, 2014) (punctuation modified, citations omitted). Lyngaas supports his request with an itemization of all litigation expenses, which include service and filing fees, travel costs, court reporter expenses, legal research charges, expert witness compensation, and costs associated with the claims administration process. See Expense Itemization (Dkt. 174-1). Lyngaas provides further documentation supporting the claims administration costs (Dkts. 174-2–174-5).[3]

---

[3] The Court ordered Lyngaas to provide further explanation and a declaration or affidavit in support of two asserted claims administration costs: (i) a July 24, 2019 Class-Settlement.com invoice for $9,932 (Dkt. 174-2), also identified as a "Class Notice" charge in Lyngaas's itemization of his expenses, see Expense Itemization at PageID.25866; and (ii) a February 14, 2020 Class-Settlement.com quote that includes $11,580 for "Settlement Distribution" (Dkt. 174-4), also identified as a charge "[t]o be paid to Class-Settlement.com if money is recovered and distributed," see Expense Itemization at PageID.25866. See 6/3/22 Order at 1.

Lyngaas's supplemental memorandum explains that the $9,932 charge relates to sending "the notice of pendency in the class action" and includes the costs of (i) faxing 30,074 notices and (ii) printing and mailing 4,752 postcards. 6/13/22 Pl. Suppl. Mem. at 2; 6/13/22 Merryman Dec. ¶ 5 (Dkt. 176-1). The $11,580 charge relates to work not yet performed by the administrator in connection with the processing and mailing of payments to the class member claimants once money is recovered, and it thus represents an estimate of future costs. 6/13/22 Pl. Suppl. Mem. at 2; 6/13/22 Merryman Dec. ¶ 6. Courts may award expected future expenses, setting that amount

Lyngaas has adequately demonstrated that these "expenses were reasonable and necessary to the representation of the Class," In re Prandin Direct Purchaser Antitrust Litig., No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473, at *5 (E.D. Mich. Jan. 20, 2015), and that they "reflect reasonable and appropriate expenditures associated with preparing for trial," Cason-Merenda v. VHS of Michigan, Inc., No. 2:06-cv-15601, 2016 WL 944901, at *2 (E.D. Mich. Jan. 29, 2016). Accordingly, the Court grants Lyngaas's request for litigation expenses. If actual future expenses are less than the expected future expenses proposed by Lyngaas, then the lower figure must be used to calculate distributions to class members. If the actual figure for future expenses is higher, the claims administrator will remain responsible for completing the claims process, and no additional amount may be paid to it from the recovered funds. See Bobbitt, 2009 WL 3336085, at *3.

## II. Attorney Fees

When granting an award of attorney fees, a district court is "entitled to 'substantial deference because the rationale for the award is predominantly fact-driven.'" Gascho v. Glob. Fitness Holdings, LLC, 822 F.3d 269, 279 (6th Cir. 2016) (quoting Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 551 (6th Cir.2008)). The Sixth Circuit "require[s] only that awards of attorney's fees be reasonable under the circumstances." Moulton v. U.S. Steel Corp., 581 F.3d 344, 352 (6th Cir. 2009) (punctuation modified, citations omitted). "[A] reasonable award of attorney fees is one that is adequate to attract competent counsel, but does not produce a windfall

---

as a ceiling in the event that actual expenses are higher than the expected future expense figure, and providing for the use of the actual expense figure if it is lower than the expected future expense figure. See, e.g., Bobbitt v. Acad. of Ct. Reporting, Inc., No. 07-10742, 2009 WL 3336085, at *3 (E.D. Mich. Oct. 15, 2009).

4

to attorneys." Michel v. WM Healthcare Sols., Inc., No. 1:10-cv-638, 2014 WL 497031, at *16 (S.D. Ohio Feb. 7, 2014) (citing Gonter v. Hunt Valve Co., Inc., 510 F.3d 610, 616 (6th Cir. 2007)).

A court awarding attorney fees in a class action may calculate that award through either (i) the lodestar method, according to which the court "multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate," or (ii) the percentage-of-the-fund method, according to which the court awards to class counsel an appropriate percentage of the monies won by the class. Gascho, 822 F.3d at 279 (punctuation modified, citations omitted). "District courts have the discretion to select the particular method of calculation, but must articulate the 'reasons for adopting a particular methodology and the factors considered in arriving at the fee.'" Id. at 280 (quoting Moulton, 581 F.3d at 352) (punctuation modified, other citations omitted). Courts "[o]ften, but by no means invariably," explain their rationale for granting attorney fees in class actions by addressing six factors:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

Moulton, 581 F.3d at 352 (punctuation modified, citations omitted).

Lyngaas proposes that the Court apply a percentage-of-the-fund approach. Pl. Mem. in Supp. Mot. at 9–12. The Court agrees that the percentage-of-the-fund approach is appropriate. "This method of awarding attorneys' fees is preferred in this District because it conserves judicial resources and aligns the interests of class counsel and the class members." In re Auto. Parts Antitrust Litig., No. 2:12-cv-00203, 2017 WL 3525415, at *2 (E.D. Mich. July 10, 2017); see also Cason-Merenda, 2016 WL 944901, at *1–2 (noting that "the recent trend has been towards application of the percentage of the fund method"). As courts have found in other TCPA class

5

actions, the percentage-of-the-fund method here "most accurately reflects the results achieved in [the] case." Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc., No. 3:15-cv-2673, 2018 WL 4539287, at *4 (N.D. Ohio Sept. 21, 2018) (noting that this approach "is the preferred method in the Sixth Circuit for common fund cases").

Lyngaas also proposes that the requested percentage be applied to the entire recovery amount of $907,500—that is, that class counsel get its attorney fee cut before the deduction of litigation costs. See Pl. Mem. in Supp. Mot. at 9, 15. Lyngaas does not make any argument or cite any case law specifically in support of applying the percentage to the gross amount of the fund in this fashion, rather than granting an attorney award based on the net amount remaining after the removal of litigation costs. Although Lyngaas's proposed approach is allowable, see, e.g., In re Packaged Ice Antitrust Litig., No. 08-MDL-01952, 2011 WL 6209188, at *17 (E.D. Mich. Dec. 13, 2011), courts often apply the percentage-of-the-fund after the removal of litigation costs, as evidenced by some of the case law cited by Lyngaas. See Pl. Mem. in Supp. Mot. at 10 (citing In re Auto. Parts, 2017 WL 3525415, at *2). In this circumstance, the Court finds it appropriate to apply the percentage-of-the-fund to the net amount of the fund remaining after class counsel takes out litigation costs, which incentivizes attorneys to responsibly manage those costs.

Lyngaas asks that the Court award class counsel one third of the fund, asserting that "[c]lass action attorney's fees are typically one third of the funds made available to the class members." Pl. Mem. in Supp. Mot. at 12. Lyngaas is correct that class counsel awards often hover at or a bit below 33%, though courts have found that the majority of awards are in the range of 20–30%.[4]

---

[4] See, e.g., Garner Properties & Mgmt., LLC v. City of Inkster, No. 17-cv-13960, 2020 WL 4726938, at *10 (E.D. Mich. Aug. 14, 2020) ("'The majority of common fund fee awards fall between 20% and 30% of the fund.'") (quoting Gooch v. Life Invs. Ins. Co. of Am., 672 F.3d 402, 426 (6th Cir. 2012)) (punctuation modified); Elwert, 2018 WL 4539287, at *5 (awarding one third of fund in TCPA class action, noting: "one-third of the fund is an amount frequently awarded by

And even though "[a]n award of 1/3 of a common fund is within the percentage range that courts have awarded [to class counsel . . .] in the Sixth Circuit[, . . . ] it remains incumbent upon the Court to evaluate the propriety of the fee award in this case based on the circumstances of this case, not necessarily what has been appropriate in other cases." Michel, 2014 WL 497031, at *14 (emphasis in original) (awarding class counsel 15% of fund in TCPA suit instead of requested award of one third of fund); see also Bowman v. Art Van Furniture, Inc., No. 17-11630, 2018 WL 6444514, at *1 (E.D. Mich. Dec. 10, 2018) (rejecting class counsel's request for an award of one third of fund won in TCPA class action—equal to over $1.9 million—and instead granting an award of approximately half that amount, noting: "case law supports a range of percentages as acceptable awards in various circumstances"). The Court, therefore, considers the factors identified in Moulton as applied to the particular context of this suit.

As to the first factor that courts weigh when considering a request for attorney fees, the achieved benefit to the class under Lyngaas's proposed approach is fair. Following the deduction of litigation expenses and the proposed attorney fees, the remaining fund would hold $508,509.22. Class members would thus receive $280.17 for each violation—a reasonably healthy outcome in a TPCA suit. See Michel, 2014 WL 497031, at *18 (granting attorney award in TCPA class action that resulted in approximately $245 paid to each class member). The Court notes, however, that

---

district courts in the Sixth Circuit"); Cason-Merenda, 2016 WL 944901, at *2 (noting that "roughly 29% of the overall common fund[] is well within the bounds of what courts have found appropriate"); In re Packaged Ice, 2011 WL 6209188, at *19 ("[T]he requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions."); In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 532 (E.D. Mich. 2003) ("The requested 17% fee is well within the 20–30% range of reasonable attorneys' fees generally awarded in this Circuit.") (citing Fournier v. PFS Invs., Inc., 997 F. Supp. 828, 832 (E.D. Mich. 1998)) ("The 'benchmark' percentage for this standard has been 25%, with the ordinary range for attorney's fees between 20–30%.").

7

judgment is just now being entered, and no amount has yet been collected.[5] Additionally, recovery would be more secure if class counsel had successfully established the liability of Curaden's parent company.

The second factor calls for a consideration of the value of the services rendered on an hourly basis. Class counsel's lodestar totals more than $1.9 million.[6] Class counsel's proposed award of under $300,000 is thus a "discount," which weighs in favor of granting their requested award. Allan, 2014 WL 12656718, at *2.

The third factor concerns "whether the services were undertaken on a contingent fee basis." Upon the Court's order, see 6/3/22 Order at 1, class counsel produced a copy of their agreement providing for their representation of Lyngass, see Representation Agreement (Dkt. 179-2). This agreement confirms that counsel's claim to costs was contingent on obtaining a recovery, id. at 2, which favors the grant of their requested award, see, e.g., Kogan v. AIMCO Fox Chase, L.P., 193 F.R.D. 496, 504 (E.D. Mich. 2000).

However, the Court observes that class counsel also made costs contingent on the obtainment of a recovery, which violates codes of professional ethics requiring that "[c]osts and

---

[5] After finding that Curaden was liable to the class for a total of $907,500, the Court directed that, within 14 days, either (i) the parties submit a proposed order or judgment, if they could agree on the form and language; or (ii) Lyngaas file a motion for entry, if the parties could not agree on the form and language. See 12/21/21 Op. & Order at 7 (Dkt. 173). Not having received any proposed order, proposed judgment, or motion for entry almost seven months after issuing this order, the Court instructed Lyngaas to provide an explanation (Dkt. 181). Lyngaas then submitted a proposed "final judgment order" and stated that the Court's deadline was overlooked due to an "oversight." 7/19/22 Pl. Mem. at 2 (Dkt. 182).

[6] Counsel for Lyngaas initially represented that its lodestar amount was "more than one million dollars." Pl. Mem. in Supp. Mot. at 12. The Court ordered Lyngaas to provide further explanation of this lodestar value. See 6/3/22 Order at 1. Lyngaas submitted the total hours and rates of fourteen attorneys and three paralegals who worked on this case, adding up to a collective lodestar value of $1,969,024.50. 6/13/22 Pl. Suppl. Mem. at 3–4. Lyngaas submits that these hourly rates are consistent with standard market rates based on experience level. Id. at 4–5.

8

other expenses of litigation are costs to be borne by the client." Stevenson v. HH & N/Turner, No. 01-71750, 2003 WL 22480156, at *2 (E.D. Mich. Oct. 22, 2003) (citing Mich. Rule Prof'l Conduct 1.8(e)(1)) ("A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation . . . ."). This lapse in judgment reflects poorly on counsel's professionalism, which—as discussed below in relation to class counsel's professional skill—supports a reduction of class counsel's fee.

As to the fourth factor—society's stake in rewarding attorneys for producing such benefits to incentivize others—it is true that "[t]here is value to society in enforcing the TCPA, which was enacted . . . to protect consumers from the annoyance, irritation, and unwanted nuisance of telemarketing phone calls, granting protection to consumers' identifiable concrete interests in preserving their rights to privacy and seclusion." Bowman, 2018 WL 6444514, at *3. Nonetheless, the goal of properly incentivizing attorneys here favors granting an award "less than the contingent fee requested by Plaintiff's counsel." Id. Notwithstanding society's "significant stake in rewarding attorneys who pursue [TCPA] actions," an award is not reasonable if it provides attorneys with a "windfall." Michel, 2014 WL 497031, at *16. In light of the factors that follow, a grant of Lyngaas's requested award would more closely approximate a "windful" than a reward for work well-done that properly incentivizes other attorneys to emulate class counsel's approach. See Bowman, 2018 WL 6444514, at *3; Michel, 2014 WL 497031, at *16.

The last two factors—the complexity of the litigation and the professional skill and standing of counsel—counsel the Court to decrease class counsel's proposed award. Like the TCPA case where the Bowman court reduced class counsel's attorney fees award, "this case was not particularly complex, nor protracted . . . ." Bowman, 2018 WL 6444514, at *3. The Court has already noted counsel's lack of professionalism in including unethical terms in its representation

9

agreement and in failing to timely comply with Court orders necessary to secure payment for the class. Additionally, there were times during trial when counsel's performance was simply inept.[7] This level of competence supports a reduction to class counsel's attorney fee. See Michel, 2014 WL 497031, at *14–18 (reducing a proposed award of one third of the fund to 15% where the "quality of the work done . . . was ordinary at best" and featured "several substantive mistakes").

Based on all of these considerations, the Court reduces Lyngaas's proposed award of one third of the gross amount of the fund to 25% of the fund after subtraction of litigation expenses and the class representative award discussed below. The Court thus awards attorney fees equal to $202,002.31, leaving $606,006.91 in the fund for class members and resulting in a distribution of $333.89 per violative fax transmission.

### III. Named Plaintiff Incentive Award

Lyngaas seeks to individually award Lyngaas $15,000 for serving as class representative— taken from monies that otherwise would go to attorney fees. Pl. Mem. in Supp. Mot. at 13–15. Lyngaas submits that this award is merited because he "filed and pursued the action, responded to discovery, was deposed, stayed involved and informed, and testified at trial." Id. at 15.

Requests for incentive awards for class representatives "are scrutinized carefully by courts who sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing

---

[7] The Court asked Plaintiff's counsel to explain why no representative from Westfax—the company that sent faxes on behalf of Curaden—had testified. Trial Tr. at 43 (Dkt. 116). Counsel responded unsatisfactorily that they had not determined that Westfax had been used to send faxes until the end of the discovery period. Id. at 44–45. Counsel was unable to explain why they had not sought to extend discovery or subpoena a representative of Westfax, suggesting— incorrectly—that a Westfax representative in Colorado or California was beyond the reach of a federal subpoena. Id. at 44. As a result of class counsel's failure to secure Westfax's testimony, no determination could be made at trial as to how many faxes had been sent, which precluded a judgment at the conclusion of trial of an amount to award the class as a whole. This issue necessitated further briefing on the propriety of the administration process to determine the amount. See 11/21/19 Op. & Order at 36–38 (Dkt. 129).

suit or to compromise the interest of the class for personal gain." Hadix v. Johnson, 322 F.3d 895, 897 (6th Cir. 2003). Courts "should be most dubious of incentive payments when they make the class representatives whole, or (as here) even more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." In re Dry Max Pampers Litig., 724 F.3d 713, 722 (6th Cir. 2013).

The Court is skeptical of Lyngaas's proposal that his willingness to be deposed and to testify at trial should result in an award more than 50 times the amount received by non-named class members. See Michel, 2014 WL 497031, at *11–*12 (finding that proposed award to class representative of $10,000 in TCPA class action was "disproportionate to the benefit awarded to unnamed Class Members"—approximately $190 per class member according to class counsel's request—and reducing class representative award to $3,000); Spine & Sports Chiropractic, Inc. v. ZirMed, Inc., No. 3:13-cv-00489, 2015 WL 9413143, at *3 (W.D. Ky. Dec. 22, 2015) (reducing proposed class representative award of $10,000 in TCPA class action to $5,000). Other than Lyngaas's very brief testimony at trial, there is no other action on his part that he says justifies the award of a significant amount.

The Court is further concerned that Lyngaas's relationship with class counsel suggests that he may be seeking an inappropriate "bounty" for bringing suit. Not only does the representation agreement absolve Lyngaas of costs in violation of professional standards, see Representation Agreement at 2; Mich. Rule Prof'l Conduct 1.8(e)(1), but Lyngaas has already filed multiple TCPA class actions through class counsel, see Lyngaas v. Reckner Associates, Inc., et al., Case No. 17-cv-12867, Compl. (Dkt. 1) (E.D. Mich.); Lyngaas v. IQVIA INC., Case No. 20-cv-02370 (E.D. Penn.), Compl. (Dkt. 1); Lyngaas v. United Concordia Companies, INC. et al., Case No. 21-cv-

11

11604, Compl. (Dkt. 1) (E.D. Mich.); Lyngaas v. Solstice Benefits, Inc., Case No. 22-cv-10830, Compl. (Dkt. 1) (E.D. Mich.). This trend may suggest that Lyngaas and class counsel have identified each other as referral sources for TCPA litigation.

Additionally, although Lyngaas proposes that his class representative award be taken from attorney fees rather than the fund, this Court is not aware of any case in this district approving such an arrangement, and none of the cases cited by Lyngaas in support of his request for a class representative award allocated those monies out of the attorney fee award. See Pl. Mem. in Supp. Mot. at 13–15 (citing Rusgo and DePanicis, Inc. v. Walter J. Svenkesen Ins. Agency, Inc., et al., Case No. 16-cv-12966, 9/19/17 Order (Dkt. 32) (E.D. Mich.); Imhoff Investment, LLC v. Sammichaels, Inc., Case No. 10-cv-10996, 11/2/16 Order (Dkt. 120) (E.D. Mich.); Jackson's Five Star Catering, Inc. v. Beason, et al., Case No. 10-cv-10010, 4/15/2015 Order (Dkt. 90) (E.D. Mich.)) (other citations omitted). Where professional rules of conduct disallow fee-sharing between attorneys and their clients, an attorney's "arrangement to split his fee with his client [is] patently unethical." Keener v. Dep't of Army, 136 F.R.D. 140, 150 (M.D. Tenn. 1991) (denying plaintiff's attorney's request for fees), aff'd, 956 F.2d 269 (6th Cir. 1992). Even where the absence of such a rule mitigates these ethical concerns, "it is generally best for incentive awards to be paid out of a common fund or by defendants, rather than by plaintiffs' counsel," because an incentive award paid out of attorney fees creates a "problematic" circumstance where the attorneys' "own financial interest conflicts with [the interests of] the named plaintiffs." In re UnumProvident Corp. Derivative Litig., No. 1:02-cv-386, 2010 WL 289179, at *8 (E.D. Tenn. Jan. 20, 2010) (denying request for incentive award allocated out of attorney fees).

Accordingly, the Court finds it appropriate to award Lyngaas $3,000, see Michel, 2014 WL 497031, at *12, and to apply the more typical arrangement of awarding this amount out of the total recovery rather than the award of attorney fees.

### III. CONCLUSION

For the reasons explained above, the Court grants Lyngaas's motion in part (Dkt. 174), modifying his requested relief to award (i) $96,490.78 in litigation expenses; (ii) $3,000 to Lyngaas individually in his role as class representative, to be paid from the total amount recovered; and (iii) $202,002.31 in attorney fees, equal to 25% of the total recovery after the subtraction of attorney fees and the class representative award.

SO ORDERED.

Dated: August 31, 2022  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
 United States District Judge